OPINION OF THE COURT
Alexander, J.
The Employee Retirement Income Security Act (ER-ISA) (29 USC § 1001 et seq.) mandates that all State laws, insofar as they relate to employee benefit plans, are superseded (29 USC § 1144 [a]) and that benefits provided by an employee benefit plan qualified under the act may not be assigned or alienated (29 USC § 1056 [d] [1]). The question presented is whether these provisions preclude a judgment creditor from proceeding in State court for a turnover of funds deposited into a qualified ERISA plan allegedly in violation of State laws prohibiting fraudulent conveyances (see, Debtor and Creditor Law §§ 273, 273-a, 274, 276; Business Corporation Law §§ 510, 719; EPTL 7-3.1). We conclude that ERISA does not preempt vindication of these State laws whose purpose is to inhibit the transfer of money in defraud of creditors, not to assess or regulate employee benefit plans.
I.
Planned Consumer Marketing, Inc. (PCM), was incorporated in 1972 by Edwin Lee and his brother as a joint venture. In 1973 and 1974 PCM entered into two contracts with Coats and *446 Clark, Inc. (C&C), agreeing to promote that company’s products. When C&C refused to pay the full amount due under the contracts, PCM sued for breach; C&C, alleging inadequate performance, counterclaimed for recovery of money already received. At trial, C&C prevailed on its counterclaim and judgment was entered in 1981 in the amount of $72,838.75.[1] PCM failed to satisfy the judgment, claiming to have had no employees and not to have conducted any business since 1977 or 1978. C&C subsequently discovered, however, that PCM— by Edwin Lee, its president — had deposited various sums of money into accounts at Dry Dock Savings Bank and Dollar Savings Bank (since merged) amounting to over $200,000 in the name of Planned Consumer Marketing Profit Sharing Plan (Plan). The Plan had been established in 1974, and qualified by the Internal Revenue Service as an employee benefit fund under the Employee Retirement Income Security Act of 1974 (29 USC § 1001 et seq.). The beneficiaries under the Plan were identified as Edwin Lee, Lee’s brother and Lee’s secretary; Edwin Lee and his brother were the trustees.
C&C commenced a special proceeding pursuant to CPLR article 52, seeking to have both banks turn over the funds out of which C&C might satisfy the judgment against PCM.[2] The petition contains nine causes of action alleging, among other things, that PCM created and contributed to the Plan during the period PCM was purportedly inoperative in order to defraud C&C in violation of various provisions of the Debtor and Creditor Law (§§ 273, 273-a, 276), the Business Corporation Law (§§ 510, 719) and EPTL (7-3.1), and that Edwin Lee operated PCM and the Plan for his personal benefit. PCM and Lee moved to dismiss the proceeding on the ground that Supreme Court lacks subject matter jurisdiction over the Plan *447 insofar as ERISA preempts State laws that relate to employee benefit plans, and, in any event, precludes the alienation of assets in a trust regulated by that act.
Supreme Court denied the motion, concluding that the gist of the petition was the violation of State fraud laws, not provisions of ERISA. The Appellate Division modified by dismissing the first two causes of action as relating solely to issues regulated by ERISA,[3] striking the relief requested in the seventh and eighth causes of action as improperly seeking to reach ERISA funds,[4] and finding ERISA did not preempt the third, fourth, fifth, sixth and ninth causes of action.[5] The court held that these claims were not preempted by ERISA because "Congress never intended that ERISA be invoked to shield the use of an employee benefit plan as an instrumentality of fraud to defeat the rights of creditors” (127 AD2d, at 370). The appeal is before this court by leave of the Appellate Division, certifying the following question: "Was the order of this Court, which modified the order of the Supreme Court, properly made?” For the reasons that follow, we affirm the order of the Appellate Division and answer the question certified in the affirmative.
II.
A.
After careful study of the inequities and inconsistencies *448 plaguing private retirement pension programs, Congress enacted ERISA in 1974 to protect "the interests of participants in employee benefit plans and their beneficiaries” (29 USC § 1001 [b]; Shaw v Delta Air Lines, 463 US 85, 90-91; Sasso v Vachris, 66 NY2d 28, 31). As described by the United States Supreme Court, ERISA is "a 'comprehensive and reticulated statute’ * * * adopted * * * to ensure that 'if a worker has been promised a defined pension benefit upon retirement — and if he has fulfilled whatever conditions are required to obtain a vested benefit * * * he actually receives it’ ” (Alessi v Raybestos-Manhattan, Inc., 451 US 504, 510, quoting Nachman Corp. v Pension Benefit Guar. Corp., 446 US 359, 361, 375). In furtherance of these purposes, ERISA prescribes requirements for reporting and disclosure of financial information, authorizes certain methods of funding and vesting of benefits, and establishes standards of conduct and responsibility for the fiduciaries of employee benefit plans (29 USC §§ 1021-1114).
To assure uniformity in the creation and administration of these plans, Congress eliminated the potential for conflicting or inconsistent State regulation by including a supersedure clause, stating that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan” (29 USC § 1144 [a]; see generally, Hutchinson & Ifshin, Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974, 46 U Chi L Rev 23 [1978]).[6] This preemption clause has been described as "virtually unique” in its breadth and scope (Franchise Tax Bd. v Laborers Vacation Trust, 463 US 1, 24, n 26). The language, "relate to”, is to be interpreted broadly (Shaw v Delta Air Lines, 463 US 85, 96-97, supra), and the statute itself defines the term "State” for purposes of preemption as "a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans” (29 USC § 1144 [c] [2] [emphasis added]). Hence, ERISA "preclude[s] the States from avoiding through form the substance of the preemption provision” (Alessi v Raybestos-Manhattan, Inc., 451 US 504, 525, supra).
Relying on these principles, and on our decision in Retail *449 Shoe Health Commn. v Reminick (62 NY2d 173, cert denied sub nom. Reminick v Maltz, 471 US 1022), PCM and Edwin Lee, individually, challenge the finding of subject matter jurisdiction over the third, fourth, fifth, sixth and ninth causes of action, arguing that application of the State Debtor and Creditor Law, the Business Corporation Law, and EPTL to funds deposited into a trust regulated by ERISA is expressly preempted by that act.
In Retail Shoe, an ERISA plan brought an action in State court against its accountants for alleged negligence in failing to detect and report the misappropriation of fund assets. The accountants subsequently asserted third-party claims against the individual trustees for contribution or indemnity based on allegations that they contributed to the losses sustained by the plan due to breaches of their fiduciary duties as ERISA trustees (Retail Shoe Health Commn. v Reminick, 62 NY2d 173, 176, supra). We held that State courts were foreclosed from entertaining the claims against the trustees. The gravamen of the claims over, we said, was liability due to breaches of fiduciary duties established by ERISA. "It is substantive claims of just this character that fall squarely within the scope and thus the pre-emption of ERISA” (Retail Shoe Health Commn. v Reminick, 62 NY2d 173, 178, supra). Insofar as the act (29 USC § 1132) provides that the District Courts of the United States shall have exclusive jurisdiction over civil actions arising under ERISA (with certain exceptions not relevant), the claims against the individual trustees could not be entertained in State court.
The exercise of Federal supremacy, however, is not lightly presumed (Alessi v Raybestos-Manhattan, Inc., 451 US 504, 522, supra), and preemption of State laws " 'is not favored "in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained” ’ ” (Alessi v Raybestos-Manhattan, Inc., 451 US 504, 522, supra, quoting Florida Lime & Avocado Growers v Paul, 373 US 132, 142). Although Congress expressly reserved for Federal jurisdiction regulation of employee benefit plans, no court has held that ERISA precludes any State court action even where an ERISA plan is only tangentially implicated. As the Supreme Court has recognized, some State actions "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to’ the plan” (Shaw v Delta Air Lines, 463 US 85, 100, n 21, supra). Only State *450 laws that purport to regulate, directly or indirectly, the terms and conditions of employee benefit plans are preempted (Sasso v Vachris, 66 NY2d 28, 32). The causes of action stated here, unlike the indemnity actions in Retail Shoe, do not purport to relate, directly or indirectly, to the terms and conditions of employee benefit plans and are therefore not preempted by ERISA. We turn first to the three causes of action alleging violations of the Debtor and Creditor Law.
The Debtor and Creditor Law renders certain conveyances of assets void as to creditors: a conveyance made without fair consideration, rendering the transferor insolvent (Debtor and Creditor Law § 273); a conveyance made without fair consideration by a business person leaving him or her with unreasonably small capital (Debtor and Creditor Law § 274); a conveyance made by a defendant during the pendency of an action for money damages or after the docketing of such judgment is void as to the plaintiff in that action (Debtor and Creditor Law § 273-a); and a conveyance made with actual intent to defraud is fraudulent as to both present and future creditors (Debtor and Creditor Law § 276; see generally, 30 NY Jur 2d, Creditors’ Rights and Remedies, §§ 230-270). The third, fourth and fifth causes of action allege that PCM created and contributed to the Plan, with the intent to avoid creditors, at a time when PCM was a counterclaim defendant against C&C, and when PCM was insolvent and inoperative, leaving it with an unreasonably small capital — all in violation of these provisions.
The gravamen of these causes of action have no relation to the provisions established by ERISA; rather their thrust is that the Plan was used as a vehicle for Lee to shield the assets of PCM from PCM’s creditors. The statutory provisions invoked by C&C seek to inhibit fraudulent conveyances and to protect creditors from debtors’ efforts to elude payment. They do not purport to relate, directly or indirectly, to employee benefit plans in general, nor do they have the effect of impermissibly regulating such plans; they neither prohibit, nor permit any particular method of administering an ERISA plan or of calculating the benefits to be derived therefrom (see, Alessi v Raybestos-Manhattan, Inc., 451 US 504, 524, supra). Moreover, C&C does not seek to enforce rights under the Plan, nor could it as it is not one of the enumerated parties empowered to bring a civil action under ERISA (see, 29 USC § 1132 [a]). That the conveyances at issue here were directed to an ERISA fund is incidental. Congress could not have intended by the supersedure clause that ERISA foreclose the *451 vindication of State laws that prohibit conveyances in defraud of creditors.
The sixth cause of action claims that Edwin Lee, as director and officer of PCM, violated the Business Corporation Law by wrongfully distributing corporate assets. Business Corporation Law § 720 enables a judgment creditor of a corporation to bring an action against a director or officer "[t]o set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness”. Corporations are creatures of State law whose internal affairs are to be governed by State law unless Federal law expressly provides otherwise (Burks v Lasker, 441 US 471, 478; Santa Fe Indus. v Green, 430 US 462, 479, quoting Cort v Ash, 422 US 66, 84). Thus, in Sasso v Vachris (66 NY2d 28, supra), we held that Business Corporation Law § 630, which provides an enforcement mechanism for employees to recover unpaid wages, salaries and contributions to employee benefit funds directly from the 10 largest shareholders of a closely held corporation, is not preempted by ERISA. The purpose of Business Corporation Law § 630, we concluded, was remedial in nature, providing ah additional enforcement mechanism by which employees could recover delinquent contributions, and did not "relate to” the terms and conditions of employee benefit plans, but to the scope of shareholder immunity.
Similarly, the purpose of Business Corporation Law § 720 is to furnish a means of redressing the wrongful disposition of corporate assets by the corporation’s officers and directors (Cornell Mfg. Co. v Mushlin, 70 AD2d 123, 131). Such a cause of action does not purport to relate to the management of an ERISA trust, or to the trustee’s fiduciary obligations. The cause of action implicates the Plan tangentially — only insofar as it was the ERISA plan allegedly used as a device to effectuate a fraudulent scheme. The rights sought to be vindicated do not arise under ERISA. C&C does not challenge Lee in his capacity as trustee of an ERISA fund but as an officer of a corporation who has mismanaged that corporation’s funds in such a way as to avoid the corporation’s obligations to its creditors. We conclude that such a State cause of action under the Business Corporation Law, vindicating fraud and corporate mismanagement, is not preempted by ERISA (see, Cornell Mfg. Co. v Mushlin, 70 AD2d 123, 129-130, supra [State cause of action for corporate misconduct involving excessive contributions to ERISA fund under Business Corporation Law § 720 not preempted]; Goben v Barry, 237 Kan 822, 703 P2d 1378 *452 [ERISA plan established in violation of State law of corporate fiduciary duty at a time when assets placed therein were subject to court action based upon breach of that duty may be garnished pursuant to judgment rendered in action]; Smith v Crowder Jr. Co., 280 Pa Super 626, 421 A2d 1107 [ERISA does not preempt State cause of action against officer or director for wrongfully contributing corporate assets to ERISA trust for personal benefit]; cf., Deiches v Carpenters’ Health & Welfare Fund, 572 F Supp 766 [ERISA does not preempt application of State insolvency and reorganization preference statute]).
With regard to the ninth cause of action — arising under EPTL 7-3.1 — we conclude, as above, that Lee’s interest in the ERISA account may be reached by C&C upon proof that Lee created the trust for his own benefit to defraud creditors. EPTL 7-3.1 (a) provides that a "disposition in trust for the use of the creator is void as against the existing or subsequent creditors of the creator.” If C&C establishes sufficient evidence of circumstances such as would warrant piercing the PCM corporate veil, C&C may reach Lee’s interest in the Plan because it would have been created by Lee himself for his own benefit and, by definition, would be subject to the "spendthrift trust” rule enunciated in EPTL 7-3.1.
Moreover, it is worth noting that, following the Appellate Division decision in this case, the Legislature amended EPTL 7-3.1 to provide for an exception from the "spendthrift trust” rule for certain retirement plans even though created for the benefit of the creator — i.e., by a self-employed individual, or toy a partner of the entity or a shareholder of the corporation sponsoring the retirement plan (L 1987, ch 108, § 2, eff June 8, 1987, added subd [b]). The purpose of the amendment is to afford to employee benefit plans created by nonincorporated entities the same protection granted in Helmsley-Spear, Inc. v Winter (74 AD2d 195, affd 52 NY2d 984, supra) to ERISA plans created by corporate employers (see, Governor’s Bill Jacket, L 1987, ch 108). The amendment, however, specifically provides that conveyances to such plans "shall not be exempt from application to the satisfaction of a money judgment if (i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be fraudulent conveyances under article 10 of the debtor and creditor law” (EPTL 7-3.1 [b] [2], as amended [emphasis added]). To hold that EPTL 7-3.1 (a) is preempted here by ERISA would create the anomalous result that judg *453 ment creditors could, under the amended provision, reach assets fraudulently conveyed to retirement plans that otherwise fit the definition of a "spendthrift trust”, but could not reach assets fraudulently conveyed into an ERISA plan. Finally, we need not address the concern that the preemption provision in section 1144 of ERISA may bar rescission by a State court of an employer’s contributions to an employee benefit trust, no matter how fraudulent the conveyance, where the integrity of the plan’s funding would be jeopardized and innocent participants in the plan would be thereby injured (see, Smith v Crowder Jr. Co., 280 Pa Super 626, 421 A2d 1107, 1114, supra), insofar as here, C&C seeks to reach only Lee’s interest in the Plan, and those funds may not be shielded merely because they have been deposited in an ERISA trust.
B.
Alternatively, PCM and Lee argue that to the extent State laws dealing with fraudulent conveyances, corporate wrongdoing and the creation of spendthrift trusts authorize a judgment creditor to reach assets in an ERISA trust, their application here impermissibly conflicts with the antialienation clause of ERISA, and is therefore preempted. In support of this argument, they cite Helmsley-Spear, Inc. v Winter (74 AD2d 195, affd 52 NY2d 984, 986, supra) and Ellis Natl. Bank v Irving Trust Co. (786 F2d 466 [2d Cir]), both of which rejected a "fraud” exception to the antialienation provision of ERISA.[7]
ERISA requires that each pension plan provide that benefits may not be assigned or alienated (29 USC § 1056 [d] [1]), and the Internal Revenue Service has promulgated regulations *454 pursuant to ERISA to the effect that "benefits provided under the plan may not be * * * assigned * * * alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process” (Fed Treas Reg [26 CFR] § 1.401 [a]-13 [b] [1] [1980]). In Helmsley-Spear, the employer sought to attach the assets, including those in an ERISA fund, of an employee convicted of having stolen checks from his employer. The Appellate Division held, and we agreed, that under those circumstances, vested benefits from an ERISA trust are exempt from attachment by creditors (Helmsley-Spear, Inc. v Winter, 74 AD2d 195, 198, supra). Similarly, in Ellis (supra), the Second Circuit held that the antialienation provision of ERISA prohibits an employer from reclaiming certain funds contributed to an ERISA trust even though those funds represent moneys ultimately derived from fraudulent practices against the employer for which the employee was convicted. Both cases involved an employer’s attempt to reach assets of an employee in satisfaction of a judgment based on wrongdoing wholly unrelated to the creation and disposition of funds into an ERISA account. The fraud occurred separately from and independently of the employee’s ERISA interests, and there was no attempt to abuse the Federal shield of ERISA assets in order to violate State fraud laws.
Here, however, the very creation and enhancement, of the trust is alleged to have been in defraud of creditors. Although the legislative history of this provision is sparse (see, Ellis Natl. Bank v Irving Trust Co., 786 F2d 466, 470, supra, citing Northwest Airlines v Roemer, 603 F Supp 7, 9-10; and H Conf Rep No. 93-1280, 93d Cong, 2d Sess, reprinted in 1974 US Code Cong & Ad News 4639, 5061), suggested purposes of the antialienation clause include the protection of the spendthrift employee from " 'his own financial improvidence in dealing with third parties’ * * * and the prohibition of involuntary levies by third party creditors on vested plan benefits” (Ellis Natl. Bank v Irving Trust Co., 786 F2d 466, 470, supra, quoting American Tel. & Tel. Co. v Merry, 592 F2d 118, 124). The antialienation provision, however, has never been held to be absolute, and indeed several courts have recognized, for example, an exception for family support orders (see, e.g., American Tel. & Tel. Co. v Merry, 592 F2d 118, supra; the exception has since been codified see, 29 USC § 1056 [d] [3], added 1984, Pub L 98-397). These purposes neither expressly nor impliedly conflict with the prevention of debtor fraud — a field traditionally within the power of the States to police. We *455 conclude, therefore, that the application of State laws voiding conveyances made in defraud of creditors does not impermissibly conflict with the identified purposes of the antialienation provision in ERISA.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Simons, Kaye, Hancock, Jr., Bellacosa and Dillon* concur.
Order affirmed, with costs, and certified question answered in the affirmative.

. With continuing accrual of postjudgment interest, the amount has surpassed $100,000.

. CPLR 5225 (b) provides in relevant part: "Upon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money * * * in which the judgment debtor has an interest, or against a person who is a transferee of money * * * from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor’s rights to the property are superior to those of the transferee, the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment”. Similarly, CPLR 5227 provides for the same proceeding for recovery of a debt owed the judgment debtor (see, Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5227:3, at 287).

. The first cause of action alleged that the Plan did not exist as a legal entity because there was no written indenture of trust. PCM produced the document, however, and that claim was dismissed as moot, or in the alternative as preempted by ERISA. The second cause of action alleged that the Plan was not a legal entity because Lee engaged in activities in contravention of the terms of the Plan, which claims, the Appellate Division held, are preempted by ERISA.

. The seventh and eighth causes of action allege the unlawful transfer of corporate assets in violation of Debtor and Creditor Law and Business Corporation Law, but do not allege the fraudulent transfer of assets into the Plan itself. Thus, to the extent that the wrongs alleged in these claims do not implicate the validity of transfers to the ERISA plan, the Plan’s funds, the Appellate Division held, are beyond the reach of creditors under these claims (Helmsley-Spear, Inc. v Winter, 74 AD2d 195, affd 52 NY2d 984).

. The Appellate Division interpreted the sixth cause of action as having stated a claim pursuant to Business Corporation Law §§ 510 and 719, which provide remedies for enforcement of a director’s liability exclusively to the corporation, not to the creditors of the corporation. The count was dismissed with leave to renew, however, under Business Corporation Law § 720, which authorizes an action, by a judgment creditor, to set aside unlawful conveyances. Insofar as PCM is aggrieved by the dismissal with leave to replead, we address the challenge to the subject matter jurisdiction of that cause of action as well.

. The statute provides for exceptions to the preemption mandate for State laws which regulate insurance, banking and securities, and "any generally applicable criminal law of a State” (20 USC § 1144 [b]X

. The Federal circuits appear to be split with respect to ERISA’s antialienation provision and the garnishment or attachment of an employee’s ERISA funds (compare, United Metal Prods. v National Bank, 811 F2d 297 [6th Cir 1987], appeal pending — US —, 97 L Ed 2d 760 [no implied exception to antialienation provision allowing employer to garnish employee’s ERISA pension when employee commits fraud against employer]; and Ellis Natl. Bank v Irving Trust Co., 786 F2d 466 [2d Cir 1986] [no criminal misconduct exception to ERISA’s antialienation provision], with Crawford v La Boucherie Bernard, 815 F2d 117 [DC Cir 1987], cert denied sub nom. Goldstein v Crawford, — US —, 98 L Ed 2d 355 [traditional trust remedies for wrongful depletion of assets not preempted by antialienation provision of ERISA]; and St. Paul Fire & Mar. Ins. v Cox, 752 F2d 550 [11th Cir 1985] [garnishment undertaken to satisfy liabilities arising from criminal misconduct toward employer constitutes exception to antialienation provision of ERISA]).

 Designated pursuant to NY Constitution, article VI, § 2.