**In re Goda Shri and Geeta SHAILAM, Debtors.**

**Bankruptcy No. 91–14030.**

United States Bankruptcy Court,
N.D. New York.

Aug. 25, 1992.

Carter, Conboy Bardwell, Case, Blackmore & Napierski, Albany, N.Y. (Michael Jude O'Connor, of counsel), for debtor.

Dulin, Harris & Bixby, Albany, N.Y., for trustee.

Baer, Marks & Opham, New York City (Alan Dinkoff, of counsel), for Dean Witter.

Gregory G. Harris, trustee.

## MEMORANDUM–DECISION AND ORDER

JUSTIN J. MAHONEY, Chief Judge.

The debtors' schedules claim as exempt the debtors' interest in Pension and Keogh plans valued at $421,000 under New York Debtor and Creditor Law Article 10–A and § 5205(c) of the New York Civil Practice Law and Rules (McKinney's Consolidated Laws of New York Supp.1992).

In his written objection, the trustee sets forth three bases for finding the funds to be nonexempt: 1) that the plans are not the type of plans covered by the New York exemption statute, 2) that the plans are not spendthrift plans, and, 3) that the transfer of said monies into the debtors' pension and Keogh plans constitute fraudulent conveyances under New York State Debtor and Creditor Law.

Debtor Goda Shri Shailam is a physician who has operated his practice through a wholly-owned professional corporation since 1977. Prior to incorporation, the debtor periodically contributed to a Keogh plan qualified under § 401 of the Internal Revenue Code. No contributions have been made into the Keogh plan since the business was incorporated. The Keogh plan had accumulated earnings of approximately $40,000 when the present bankruptcy petition was filed on October 11, 1992.

In 1977, a defined benefit pension plan, (hereafter, "plan") was set up under § 401 of the Internal Revenue Code of 1986 to provide for retirement or disability benefits for employees of the business. Under the terms of the plan, the corporation—then Goda Shri Shailam, M.D., P.C.—is the "Employee" and Dr. Shailam is the "trustee." Based upon the anticipated retirement of the plan's chief beneficiary, Dr. Shailam, at the age of 55, the corporation made contributions over the next ten years to the pension plan. The only other beneficiaries under the plan are the debtor's wife, co-debtor Geeta Shailam, who serves as receptionist for the business and a third employee.

As trustee under the plan, Dr. Shailam invested the plan assets in general stocks and options through an account with Norstar Brokerage Corporation. When the stock market took a nosedive on October 19, 1987, the plan lost 100% of its assets. The October crash also adversely impacted the debtors' personal finances. The debtors had personally invested large sums of money in options trading through three brokerage firms: Norstar Brokerage, Dean Witter Reynolds and Moore and Schley. As a result of the crash, the debtors incurred substantial losses in their short put positions, and, when the accounts were called, the debtors were left owing the brokerage firms in excess of one million dollars.

The present petition reflects outstanding debt to the brokerage firms of approximately 1.1 million dollars.

The record indicates that the professional corporation contributed all of its available income after payment of corporate expenses to the plan from 1987 to 1990. This resulted in the following contributions to the plan:

| | |
|---|---|
| 1987 | $ 99,400 |
| 1988 | $164,108 |
| 1989 | $112,529 |
| 1990 | $ 91,370 |

In 1990 a new professional corporation, Amsterdam Eye, Ear and Throat, P.C. was formed to operate Dr. Shailam's practice. The new corporation adopted the existing pension plan and has contributed the following:

1990 $95,664

It is estimated that the 1991 contribution, due by September 15, 1992, will be "in the range of $175,000–$200,000." (Trustee's Exhibit 20).

■ The trustee contends that all of the foregoing funds should be available to satisfy the personal debts of Dr. Shailam and his wife. Section 5205(c) of the New York Civil Practice Law and Rules, "CPLR", (McKinney's Consolidated Laws of New York Supp.1992) provides in pertinent part:

(c) Trust exemption. ... all property while held in trust for a judgment debtor, where the trust has been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor, is exempt from application to the satisfaction of a money judgment.

2. For purposes of this subdivision, all trusts, custodial accounts, annuities, insurance contracts, monies, assets or interests established as part of, and all payments from, either a Keogh (HR–10), retirement or other plan established by a corporation, which is qualified under section 401 of the United States Internal Revenue Code of 1986, as amended, ... shall be considered a trust which has been created by or which has proceeded from a person other than the judgment debtor, even though such judgment debtor is (i) a self-employed individual, (ii) a partner of the entity sponsoring the Keogh (HR–10) plan, or (iii) a shareholder of the corporation sponsoring the retirement or other plan.

3. All trusts, custodial accounts, annuities, insurance contracts, monies, assets, or interests described in paragraph two of this subdivision shall be conclusively presumed to be spendthrift trusts under this section and the common law of the state of New York for all purposes, including, but not limited to, all cases arising under or related to a case arising under sections one hundred one to thirteen hundred thirty of title eleven of the United States Bankruptcy Code, as amended.

. . . . .

5. Additions to an asset described in paragraph two of this subdivision shall not be exempt from application to the satisfaction of a money judgment if

(i) made after the date that is ninety days before the interposition of the claim on which such judgment was entered, or (ii) deemed to be fraudulent conveyances under article ten of the debtor and creditor law.

In applying the above statute, it appears that both the Keogh and the defined benefit plans fall squarely within the language describing exempt trusts. Under § 5205(c)(2) the plans are exempt notwithstanding the trustee's argument that Dr. Shailam is the 100% owner of the professional corporation sponsoring the plan. Furthermore, the conclusive presumption contained in § 5205(c)(3) that these trusts are spendthrift trusts forecloses the trustee's argument to the contrary. See *In re Kleist*, 114 B.R. 366 (Bkrtcy.N.D.N.Y.1990) The trustee's third contention, however, that the transfer of said funds into the debtors' Keogh and defined benefit plans are avoidable as fraudulent conveyances under the New York Debtor and Creditor Law warrants discussion.

As to the $40,000 in the Keogh plan, the trustee readily admitted in his response to interrogatory no. 4 that to the extent that no contributions have been made to the Keogh plan since October, 1987, that he does not assert that there has been a fraudulent conveyance of funds as to that asset. (C.P. No. 18) Since the record reflects that in fact there have been no contributions since ten years before that date, the Keogh plan is found to be fully exempt from administration by the trustee.

Recently, the United States Supreme Court in *Patterson v. Shumate*, —— U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) held that the anti-alienation provision required to be included in every plan qualified under ERISA by 29 U.S.C. § 1056(d)[1]—and, contained in the defined benefit plan under consideration before the court—constitutes a restriction on transfer enforceable under "applicable nonbankruptcy law" for purposes of excluding the beneficial interest of the debtor in the trust from property of the estate. The trustee in

his brief submitted prior to the reporting of the *Patterson* case argued for an opposite result than that reached by *Patterson* which, when coupled with his other contention that the provisions of ERISA preempt provisions of the Debtor and Creditor Law and the CPLR, provided a legal basis for including the trust asset in the bankruptcy estate. While *Patterson* is now the final word on reading the language of § 541(c)(2) to include ERISA as other "applicable nonbankruptcy law" for purposes of excluding property from the estate, resolution of the issue raised by the trustee as to how the preemption clause of ERISA interfaces with other New York law is essential prior to even considering the trustee's contention that the debtors' beneficial interest in the ERISA-qualified trust should be deemed a fraudulent conveyance under New York law.

■ The Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq., mandates at section 1144[a] that all state laws are superceded "insofar as they may now or hereafter relate to any employee benefit plans." The preemption clause has been described as "conspicuous for its breadth" *FMC Corp. v. Holliday*, 498 U.S. 52, ——, 111 S.Ct. 403, 407, 112 L.Ed.2d 356. Its purpose is to "establish pension regulation as exclusively a federal concern." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, ——, 111 S.Ct. 478, 482, 112 L.Ed.2d 474.

State legislation which is specifically designed to affect employee benefit plans is preempted by ERISA and, where the state law is of general application, then the issue of preemption involves whether the law "relates to" employee benefit plans. *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 829–831, 108 S.Ct. 2182, 2185–86, 100 L.Ed.2d 836.

In applying the foregoing standard, the New York Court of Appeals found that a state gains tax on real property transfers was preempted by ERISA in so far as it related to taxing the gain derived from an asset of an employee benefit plan. In the Matter of *Morgan Guaranty Trust Company of New York v. Tax Appeals Tribunal of the New York State Dept. of Taxation and Finance*, 80 N.Y.2d 44 (1992). In so ruling, the court concluded that the tax related to the benefit plan in more than a tenuous, remote or peripheral way so as to warrant preemption.

While the scope of ERISA preemption has been broadly interpreted by the U.S. Supreme Court, certain limits have been recognized which allow for the independent operation of some narrowly prescribed state laws. *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6, 9 (2d Cir.1992). This court finds that provisions of the N.Y. Debtor and Creditor Law fall within that narrow prescription and that ERISA does not preempt the trustee from raising the argument that funds deposited into a qualified ERISA plan are avoidable as fraudulent conveyances under New York law. *Planned Consumer Marketing, Inc. v. Coast and Clark, Inc.*, 71 N.Y.2d 442, 527 N.Y.S.2d 185, 522 N.E.2d 30 (1988).

The trustee relies alternatively upon Sections 273, 273–a, 275 and or 276 of the New York Debtor and Creditor Law.[1] (McKin-

---

1. The text of these sections follows.

§ 273.
Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

§ 273–a.
Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

§ 275.
Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors.

§ 276.
Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

ney's Consolidated Laws of New York 1990).

In applying the language of the fraudulent conveyance sections, each section refers to a "conveyance made" alternatively by a person: "who will be rendered insolvent" (§ 273); "is a defendant in an action" (§ 273–a); who "believes that he will incur debts beyond his ability to pay" (§ 275); with actual intent to defraud either present or future creditors (§ 276).

It is clear from the evidence that the "conveyances" at issue—i.e. the contributions into the plan—were all made by either Goda Shri Shailam, M.D., P.C. or Amsterdam Eye, Ear and Throat, P.C., the corporate employers. Yet, there is no evidence on the record that the respective corporations were rendered insolvent or unable to meet corporate debts as a result of the contributions.

■ The trustee seeks to attach the corporate pension plan asset to satisfy the individual debt of Dr. and Mrs. Shailam. In doing so, the trustee totally ignores the corporate form and ascribes the conveyances to Dr. Shailam individually by alleging that "they are alter egos. The doctor is the corporation." (Transcript at p. 127). In effect, the trustee is asking the court to pierce the corporate veil of the professional corporation. Setting aside for the moment the infirmities of the procedural posture of asking for this extraordinary remedy in the context of an objection to exemption without formally bringing the corporation before the court,[2] the court will turn to underlying New York law and address the substance of the trustee's objection.

■ While the doctrine of piercing the corporate veil is most often used to hold individual principals liable for corporate debt, there is no impediment in utilizing the alter ego theory in order to reach corporate assets for satisfaction of individual debts. New York courts pierce the corporate form only when the form has been used to achieve fraud, or when the corporation has been so dominated by an individual and its separate identity so disregarded, that it

primarily transacted the dominator's business rather than its own and can be called the other's alter ego. *William Passalacqua Builders v. Resnick Developers*, 933 F.2d 131, 138 (2d Cir.1991).

There has been no evidence presented that the professional corporation's separate identity was disregarded either in the transaction of its business of providing medical services or by the intermingling of accounts or receipts with those of the individual debtors. Rather, the trustee's major complaint is that Dr. Shailam as the president, shareholder, trustee and major beneficiary under the plan could direct corporate contributions into the plan rather than into his own pocket or into the general account where they could be tapped by Dr. Shailam's individual creditors. The trustee contends that this was done by Dr. Shailam with actual intent, to hinder, delay, or defraud creditors within the meaning of Section 276 of the New York Debtor and Creditor Law. While the other sections do not require actual intent, in order for the trustee to prevail in piercing the corporate veil, he must show that the corporate form was used to achieve fraud.

The testimony at trial established that under the particular plan at issue—a defined benefit plan—the benefit to a participant is specified, generally as a factor of age, length of service and salary. The promise by the employer to pay a defined benefit is independent of the plan's investment success. If the plan does badly with its investment, the employee's entitlement is not changed, it simply increases the amount that an employee has to contribute to make up for the prior investment decision. The trustee suggests that because the doctor chose to continue the plan thereby mandating substantial contributions to make up the deficit created by the stock market crash instead of choosing to terminate the plan, that this choice constituted a fraud upon his creditors.

As trustee of the plan, Dr. Shailam had certain fiduciary responsibilities which are

---

**2.** While the court notes that there was an appearance in this matter by counsel on behalf of Amsterdam Ear, Nose & Throat, P.C., the corporation was present merely to observe and has not been named as a defendant to any adversary proceeding that this court is aware of.

codified at 29 U.S.C. §§ 1101–1114. In pertinent part, § 1104(a) required that Dr. Shailam discharge his duties:

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;

It is clear from the type of investment and the loss sustained by the plan that Dr. Shailam violated § 1104(a)(1)(C) of his fiduciary obligations, and, most probably breached the prudent man standard of care set forth in § 1104(a)(1)(B).

Section 1109(a) of ERISA further provides:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan any losses to the plan resulting from each such breach ...

Simultaneous to Dr. Shailam incurring debt to the various brokerage houses, he was under a federal mandate to restore funding to the plan. Under the circumstances, the court cannot agree with the trustee's position that for Dr. Shailam to continue the plan was to perpetrate a fraud upon his creditors.

The primary case upon which the trustee relies to support his position, *Planned Consumer Marketing, Inc. v. Coats and Clark, Inc.,* 71 N.Y.2d 442, 527 N.Y.S.2d 185, 522 N.E.2d 30 (1988) is factually distinguishable. In *Planned Consumer* the plan in question was created by the corporation at the very time that the corporate debt which later resulted in a judgment against the corporation arose. The corporation funded the plan at a time when it was purportedly inoperative and not paying its debts. On appeal, the pleadings withstood a motion to dismiss. The facts before this court reflect a bona fide plan in

place and funded since 1977. There is no allegation that the corporation was not paying its debts. The fact that the doctor was unable to pay his personal creditors because of the plan contributions does not force this case within the fraudulent conveyance provisions of §§ 273, 273–a, 275, nor 276 nor offend the integrity of state fraudulent conveyance law.

■ Understandably, there may be a natural distaste for the result reached here which preserves a fund in excess of $563,-000 which the debtor can freely access within the year following the filing of his petition in bankruptcy. However, the fact that this is a closely held corporation should not compel a different conclusion in applying the provisions of ERISA and particularily § 206(d)(1) (29 U.S.C. § 1056(d)(1)) which generally prohibits the assignment or alienation of pension benefits. The result reached here would clearly not be questioned if the pension plan involved had numerous participants. However, the result should be the same regardless of the number of participants.

In upholding this provision as applied to the pension benefits of a chief executive officer of a labor union who embezzled union funds, the United States Supreme Court has stated:

Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them.

*Guidry v. Sheet Metal Pension Fund,* 493 U.S. 365, 376, 110 S.Ct. 680, 687, 107 L.Ed.2d 782 (1990).

Dr. Shailam, his wife and their two children as well as the third employee-beneficiary fall within the ambit of the protective scope of the legislation. To afford the trustee the relief he is seeking would clearly violate ERISA's prohibition on the alienation of pension benefits.

Accordingly, the trustee's objections are overruled.

It is so ORDERED