[631 NYS2d 309]

Morris Seidman, as Trustee of the MS Jewelry Manufacturing Co., Inc. Employees Retirement Trust Fund, on Behalf of the Beneficiaries, Appellant, v Merchants Bank of New York et al., Respondents.

First Department, September 7, 1995

## APPEARANCES OF COUNSEL

*Ronald Francis* of counsel *(Jeffrey D. Buss* on the brief; *Smith, Buss & Jacobs,* attorneys), for appellant.

*Mitchell Shenkman* of counsel *(Simon, Meyrowitz, Meyrowitz & Schlussel,* attorneys), for respondents.

## OPINION OF THE COURT

TOM, J.

The issue raised on this appeal concerns whether a bank may apply a certificate of deposit owned by an employees retirement trust fund to the debt of the employer in light of the provisions of the Employee Retirement Income Security Act of 1974 (ERISA).

MS Jewelry Manufacturing Co., Inc. (MS Jewelry) maintains a pension fund for its employees entitled the MS Jewelry Manufacturing Co., Inc. Employees Retirement Trust Fund (the Trust Fund). Plaintiff Morris Seidman and nonparty Sheldon Seidman are the Cotrustees of the Trust Fund, which was registered with the Internal Revenue Service pursuant to ERISA (29 USC § 1001 *et seq;* 26 USC § 401 [a]). Both the Trust Fund and MS Jewelry did business with defendant The Merchants Bank of New York (the Bank) for many years, obtaining and renewing certificates of deposit (CDs) thereat.

On December 3, 1987, the Trust Fund deposited $57,252.44 in a 60-day CD, numbered 105711 which, by its own terms, was automatically renewed every 60 days until July 25, 1989, by which time the principal had grown to $64,683.66. In the interim, Sheldon Seidman executed a Hypothecation Agreement (the Agreement), dated June 6, 1989, whereby he, as a Trustee of the Trust Fund, pledged CD number 105711, an asset of the Trust Fund, as security for any debts or liabilities owed by MS Jewelry to the Bank.

The proceeds of CD number 105711 were rolled over several more times with the last renewal on July 16, 1991 to CD number 148236 in the total amount of $75,706.33. The capital remained in this CD until January 16, 1992 when the Bank, pursuant to the Agreement, allegedly redeemed the CD for a loan made previously to MS Jewelry. No evidence verifying the existence of the loan has ever been submitted by the Bank.

In or about the fall of 1992, plaintiff, allegedly unaware of the redemption, requested the Bank to release the money

from CD number 148236 to allow for payment to several eligible employees of the Trust Fund. Initially, the Bank refused, explaining that the account no longer contained any funds because the monies were being held as collateral for a corporate loan but subsequently changed its position and informed plaintiff that it was searching its records to determine the status of the accounts.

After the passage of two months, during which the Bank neither released the funds nor provided an explanation as to the status of the account, plaintiff moved by order to show cause, dated February 19, 1993, for an order directing the Bank to appear at an examination before trial and to bring all records relating to CD number 148236. Prior to oral argument, the parties entered into a stipulation dated February 26, 1993, which was so ordered by the court, pursuant to which the motion was withdrawn in exchange for the Bank's agreement to provide the records requested no later than March 10, 1993 and to produce a knowledgeable officer or employee for deposition at a mutually agreed upon time no later than March 26, 1993.

On March 12, 1993, the Bank furnished what it described as all the relevant documents it had located to date. The documents produced, however, consisted solely of copies of various CDs opened by either MS Jewelry or the Trust Fund, two applications to open CDs, and one agreement whereby MS Jewelry assigned a CD to the Bank in 1986. The foregoing records shed no light on the Trust Fund account or the disposition of the funds and as a result of the Bank's continued refusal to release the funds, plaintiff initiated the underlying action in June 1993 by the service of a summons and verified complaint. The Bank's unverified answer, dated July 13, 1993, consists of a general denial.

Plaintiff subsequently served defendant a notice of discovery and inspection and a notice to depose a Bank representative on August 27, 1993. Upon the Bank's failure to produce any additional documents, plaintiff moved for summary judgment on or about September 9, 1993.

In its motion, plaintiff argued that the funds were the property of a pension plan and could not be used or set off for any purpose including the alleged, and undocumented, debt of MS Jewelry. Plaintiff also noted that the Bank failed to produce any documents explaining what happened to the CD or in any way defending its failure to turn over the proceeds.

In response, the Bank, for the first time, contended that the CD had been redeemed to repay the loan for which it had been hypothecated, relying solely on the Hypothecation Agreement, which makes no specific reference to an actual loan. The Bank glaringly fails to produce any evidence: that a corporate loan existed; that the Bank ever demanded repayment of the loan; that MS Jewelry was ever notified it defaulted on the loan; or that MS Jewelry or the Trust Fund were ever informed that the collateral was being redeemed to repay the mysterious loan.

In reply, plaintiff averred, *inter alia,* that the Bank had no legal right to use Trust Fund monies as security for a corporate loan as provided in ERISA, and that any claim by the Bank against MS Jewelry is a matter separate from Trust Fund business.

In a one-page decision and order entered on October 25, 1993, the IAS Court denied plaintiff's motion on the ground that on the record before it, specifically the Hypothecation Agreement, the plaintiff was not entitled to summary judgment. This was error and we now reverse.

Congress enacted ERISA in 1974 for the purposes of protecting the financial interests of the participants and the beneficiaries of qualified employee welfare and pension plans by preserving the soundness and stability of those plans through comprehensive Federal supervision (29 USC § 1001 [a]; *Planned Consumer Mktg. v Coats & Clark,* 127 AD2d 355, 361, *affd* 71 NY2d 442).

Section 403 (c) (1) of ERISA (codified as 29 USC § 1103 [c] [1]) provides, in relevant part: "[T]he assets of [an employee benefit pension plan] *shall never inure to the benefit of any employer* and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." (Emphasis added.)

The phrase "shall never inure to the benefit of any employer" means, broadly, that the fund shall never become " 'of advantage to the employer' " *(Amato v Western Union Intl.,* 773 F2d 1402, 1414, *cert dismissed* 474 US 1113). Section 18.04 of the Trust Fund Plan echoes the foregoing provisions and ensuing case law and states, *inter alia:* "The Plan is *established for the exclusive benefit of the Participants* and Beneficiaries of the Plan. During the Plan's existence, no assets of the Plan or Trust may revert to the Employer * * * *nor may*

*any such assets be used for the benefit of the Employer* for any purpose other than the payment of expenses of the plan, payment of benefits to Participants and Beneficiaries, and, in general, for the exclusive benefit of Participants and Beneficiaries" (emphasis added).

Simply put, the monies in the Trust Fund may not be used by the employer to its advantage *(Brown v Health Care & Retirement Corp.,* 25 F3d 90, 93; *Ciminelli Constr. Co. v Buffalo Laborers Supplemental Unemployment Benefit Fund,* 976 F2d 834).

The fund, as allegedly utilized in the matter before us, clearly inured to MS Jewelry's benefit as it provided the security pursuant to which the Bank allegedly loaned it money. This was improper as the Bank's application of Trust Fund monies to the corporate employer is clearly prohibited by ERISA.

In *Federal Deposit Ins. Corp. v Marine Natl. Exch. Bank* (500 F Supp 108), under facts similar to this case, it was held that a failed bank's ability to set off a debt owed to the bank against pension plan assets was invalid as it would have resulted in the inuring of pension plan assets to the benefit of the bank. The Bank herein feebly attempts to distinguish *Marine Natl.* by observing that in this case, the Bank used the Trust Fund assets to repay a debt of the employer, not the Bank. It is clear, however, that while the Bank's assertion is accurate, the facts herein present a more egregious violation of the provisions of ERISA than those set forth in *Marine Natl.*

The Bank's contention that plaintiff is precluded from raising the foregoing argument on appeal since neither the complaint nor the motion for summary judgment specifically alleges an ERISA violation, is without merit. Both the complaint and the moving papers identify the Trust Fund as a pension plan filed with the IRS under ERISA and, moreover, even if the argument concerning the ERISA violations was first raised in the reply affidavit, as the Bank contends, the Bank was not prejudiced as it was permitted to file a surreply.

Further, the Bank's claim that it was never made aware that the CD could not be pledged as security and that the Trust Fund Plan expressly exempts it from having to conduct any inquiry into whether the Trustee acted within his powers is also without merit. Section 11.04 of the Plan, upon which the Bank relies, states in pertinent part:

"The Trustees shall have the following powers * * * regarding property which may at any time be part of the Trust Fund * * *

"(c) to sell * * * transfer or otherwise dispose of, any property, whether real or personal. No person dealing with the Trustees shall be bound to see to the application of the purchase money or to inquire into the validity or propriety of any such sale or other disposition".

Taken in context, this provision, rather than supporting the Bank's position, concerns the selling off of property for the intended purpose of adding the purchase money to the trust corpus; it neither anticipates, addresses or permits the improper and illegal use of trust assets. In addition, the Bank's contention that the Plan exempts it from any responsibility under the circumstances is contradicted by section 18.04 of the Plan, quoted above, which clearly states that the Trust Fund was established and is maintained "for the exclusive benefit of the Participants and Beneficiaries of the Plan".

In conclusion, the Hypothecation Agreement, notwithstanding the Bank's protestations of its legitimacy, is invalid pursuant to the provisions of ERISA as the documentary evidence confirms that the missing CD was a pension fund asset. Even had the Bank presented some tangible evidence demonstrating that the CD was applied to repay a loan (a fact that the Bank has yet to document, despite numerous opportunities), as the Bank readily avers, the alleged loan was owed by MS Jewelry, not the Trust Fund, and the Bank, therefore, acted improperly.

Accordingly, the order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered October 25, 1993, which denied plaintiff's motion for summary judgment, unanimously reversed, on the law, with costs, summary judgment granted and the Clerk directed to enter judgment thereon.

WALLACH, J. P., RUBIN, ASCH and NARDELLI, JJ., concur.

Order, Supreme Court, New York County, entered October 25, 1993, reversed, on the law, with costs, and summary judgment granted.