OPINION OF THE COURT
Herbert Kramer, J.
May a judgment creditor proceed in State court for a turn *141 over of funds allegedly fraudulently transferred into a pension plan organized under the Employee Retirement Income Security Act of 1974 (Pub L 93-406, tit 1 [ERISA]) whose provisions prohibit the assignment or alienation of benefits (29 USC § 1056 [d] [1])?
Plaintiff seeks to enforce a money judgment against defendant, AVL, an insolvent corporation.[1] Relying upon tax returns and financial statements prepared by AVL’s accountants, plaintiff alleges that monies acquired from the sale of AVL’s property in Ohio were fraudulently transferred to Martin Weiner[2] ($50,000 and $54,000); Philip Peerless ($50,000 and $54,000); Atlantic Veal Corp. ($65,363.75); Atlantic Veal Pension Fund ($8,973.60); and Jackmar Brokerage Pension Fund ($25,000) in alleged violation of sections 273, 273-a, 276 and 276-a of the Debtor and Creditor Law and of section 720 of the Business Corporation Law. Plaintiff moves for summary judgment on its claims.
The defendants, vigorously contesting this schedule of disbursements, cross-move for summary judgment, asserting that any assets remaining in the defunct, corporation were used to repay an antecedent debt owed by AVL to the pension fund defendants[3] and it is this borrowed money that was replaced when, in 1994, AVL sold its only remaining asset, a *142 building and some land located in Ohio, to YHL Realty Corporation for $400,000 from which a total of $317,220.01 was disbursed to the pension fund.[4]
The thrust of defendants’ arguments is that any monies traceable to loans repaid to the pension fund defendants cannot be recovered in a turnover proceeding because of the preemption and antialienation provisions of ERISA and thus raise the question of whether the preemption and antialien-ation provisions of ERISA protect these funds.
On facts not distinguishable from those at bar,[5] this very question has been answered in the negative by the Court of Appeals in 1988 in Planned Consumer Mktg. v Coats & Clark (71 NY2d 442 [1988], supra).
Ordinarily, the inquiry would begin and end with the determination of the New York Court of Appeals in Planned Consumer Mktg. (71 NY2d 442, 445, supra) to the effect that “the application of State laws voiding conveyances made in defraud of creditors does not impermissibly conflict with the identified purposes of the antialienation provision in ERISA.” In so holding, the Court of Appeals indicated that “[t]he Federal circuits appear to be split with respect to ERISA’s antialienation provision and the garnishment or attachment of an employee’s ERISA funds”. (Supra, at 453, n 7.)[6]’
*143 However, since Planned Consumer Mktg. (supra) was decided, the United States Supreme Court, in a series of decisions, resolved the ambiguities clouding the interplay between State garnishment provisions and ERISA’s antialienation provision by unequivocally refusing to approve “any generalized equitable exception * * * to ERISA’s prohibition on the assignment or alienation of pension benefits.” (Guidry v Sheet Metal Workers Natl. Pension Fund, 493 US 365, 376 [1990].) In Guidry, the Supreme Court held that ERISA’s prohibition of the assignment or alienation of pension benefits foreclosed the imposition by a union of a constructive trust upon retirement benefits accruing to a union official convicted of embezzling funds from the union.
Particularly instructive is Guidry’s exhortation that “courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable.” (Guidry v Sheet Metal Workers Natl. Pension Fund, supra, 493 US, at 376-377.)
Approximately two years later, in Patterson v Shumate (504 US 753, 760 [1992]),[7] the Court reiterated its position in Guidry {supra), citing to Guidry and opining: “Indeed, this Court itself vigorously has enforced ERISA’s prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar.”
In 1997, the Supreme Court revisited this area and held, citing Guidry (supra), that “Statutory anti-alienation provisions *144 are potent mechanisms to prevent the dissipation of funds * * * ERISA’s pension plan anti-alienation provision is mandatory and contains only two explicit exceptions, see §§ 1056(d)(2), (d)(3)(A),[8] which are not subject to judicial expansion.” (Boggs v Boggs, 520 US 833, 851 [1997].)
The simple, straightforward approach enunciated by the United States Supreme Court provides for the uniform enforcement of “a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them.” (Guidry v Sheet Metal Workers Natl. Pension Fund, 493 US 365, 376, supra.)
However lucid the decisions of the Supreme Court in Guidry, Shumate and Boggs (supra) are, they nonetheless conflict with the determination of our Court of Appeals in Planned Consumer Mktg. (71 NY2d 442, supra; see, Tompkins County Trust Co. v Gowin, 163 Misc 2d 418 [Sup Ct, Tompkins County 1994] [questioning the continued reliability of Planned Consumer Mktg. in the wake of these decisions]). Presently we, peering up from below, must determine how to proceed without violating principles of stare decisis. Whether the Court of Appeals would have reached the conclusion it did if prior thereto the Supreme Court had rendered these decisions cannot be determined with complete certainty. Yet, it seems fair to assume that the Court of Appeals, mindful of the need to scrutinize a plaintiffs claims to ensure that they do not “ ‘conflict [] with the provisions of ERISA or operate! ] to frustrate its [objectives]’ ” (Nealy v US Healthcare HMO, 93 NY2d 209, 221 [1999], citing Boggs v Boggs, supra, 520 US, at 841), would have followed the United States Supreme Court, as, indeed, at *145 this juncture, this court is obligated to do. (People v P. J. Video, 68 NY2d 296, 302 [1986]; see, Matter of Rogers, 269 App Div 941 [2d Dept 1945], affd 296 NY 676 [1946] [grappling with the selfsame problem and deciding to follow the decision of the Supreme Court which contradicted a long line of decisions announced by the, Court of Appeals].)[9]
Thus, although the ultimate resolution of the factual dispute between the parties with respect to the disbursements of the sale proceeds and the question of whether the transfers were wrongful must be left for the trier of fact (CPLR 5225 [b]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C5225:6, C5225:7, at 266-268; see, Federal Deposit Ins. Corp. v Heilbrun, 167 AD2d 294 [1st Dept 1990]), this court holds that any proceeds from the sale of the AVL property unlawfully paid to the pension fund defendants which remain within the fiduciary responsibility of the plan managers are protected by the antialienation provisions of section 206 (d) (1) of ERISA (29 USC § 1056 [d] [1]). However, “following distribution of benefits to the plan participant or beneficiary, a creditor no longer has a right against the plan. Instead, the creditor must collect directly from the participant or beneficiary or [if need be may] initiate an enforceable garnishment procedure against a third-party bank who holds the funds paid to the participant or beneficiary.” (Guidry v Sheet Metal Workers Natl. Pension Fund, 39 F3d 1078, 1082-1083 [10th Cir 1994]; accord, Trucking Empls. of N. Jersey Welfare Fund v Colville, 16 F3d 52 [3d Cir 1994]; Brosamer v Mark, 561 NE2d 767 [Ind 1990].)
Motion and cross motion for summary judgment are denied.

. In a prior proceeding in this matter (index No. 15406/93) on August 5, 1997 this court granted summary judgment upon plaintiffs’ first cause of action against Atlantic Veal Corp. and AVL Corporation which alleged that plaintiffs made two loans to the defendants in July and October of 1990 for $300,000 and $250,000 of which $434,076.82 remains unpaid and upon the second cause of action against Atlantic which seeks repayment of the balance of the July 1990 loan; and the third cause of action against AVL which seeks repayment of the balance of the October 1990 loan. The fourth cause of action against AVL which asserted that AVL is the alter ego of Atlantic was dismissed. The individual defendants, Martin Weiner and Philip Peerless, were granted summary judgment dismissing the action as against them by a decision and order of this court dated August 16, 1994.

. Martin Weiner is “a former officer, shareholder and director of the defunct corporate defendants [AVL Corporation] and Atlantic Veal Corporation as well as a Trustee of Atlantic Veal Pension Fund (and former Trustee of Jackmar Brokerage Pension Fund, which in the early 1990s merged into Atlantic Veal Pension Fund).”

. In support of this assertion, annexed as exhibit A to Martin Weiner’s affidavit were the following: check No. 102 dated September 13, 1984 in the amount of $45,000 payable to AVL from Jackmar Brokerage Pension Plan; check No. 104 dated January 31, 1986 in the amount of $25,000 payable to AVL from Jackmar Brokerage Pension Plan; check No. 113 in the amount of $100,000 payable to AVL from Jackmar Brokerage. Martin Weiner asserts that “the ERISA trusts actually lent AVL more monies than those set forth *142 in Exhibit ‘A’ but because of the passage of time and relocations of my offices, I have been unable to locate any other checks.”

. According to Weiner, the payments were distributed as follows: at closing $100,328.25 to BankOne to satisfy the purchase money mortgage it held and $59,671.75 to the Atlantic Veal Pension Fund. Thereafter, $31,548.26 (the net balance of the down payment of $40,000) was disbursed to the Atlantic Veal Pension Fund. Over the next two years the following payments were made to the Atlantic Veal Pension Fund: $66,000 on August 28, 1995; $51,000 on November 29, 1995; $58,000 on August 26, 1996; $51,000 on November 26, 1996.

. In so holding, this court rejects defendants’ efforts to distinguish Planned Consumer Mktg. v Coats & Clark (71 NY2d 442). Defendants argue that our circumstances would require a different result since in contrast to Planned Consumer Mktg. the benefit plan here was formed before the creditor’s claim arose and the natural person defendants here have a fiduciary duty to the ERISA plans. In so arguing defendants misperceive the ratio decidendi of this case which is that the pension plan was used as a vehicle for the corporation’s president to shield the assets of the corporation from its creditors. These are precisely the allegations that are being made here and this case is thus indistinguishable from our own.

. The Court contrasted United Metal Prods. Corp. v National Bank (811 F2d 297 [6th Cir 1987]) which found “no implied exception to [the] antialien-ation provision allowing employer to garnish employee’s ERISA pension *143 when employee commits fraud against employer” (Planned Consumer Mktg. v Coats & Clark, supra, at 453, n 7) with Crawford v La Boucherie Bernard (815 F2d 117 [DC Cir 1987], cert denied sub nom. Goldstein v Crawford, 484 US 943) which held that “traditional trust remedies for wrongful depletion of assets not preempted by [the] antialienation provision of ERISA.” (Planned Consumer Mktg. v Coats & Clark, supra, at 453, n 7.)

. In Patterson, the Court held that an “antialienation provision in an ERISA-qualified pension plan constitute[d] a restriction on transfer enforceable under ‘applicable nonbankruptcy law’ for purposes of * * * § 541 (c)(2) [of the Bankruptcy Code].” (Patterson v Shumate, 504 US 753, 757 [1992], supra.)

. 29 USC § 1056 (d) (2) provides in pertinent part: “For the purposes of paragraph (1) of this subsection, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment, or of any irrevocable assignment or alienation of benefits executed before September 2, 1974”.
29 USC § 1056 (d) (3) (A) provides in pertinent part: “Paragraph (1) shall apply to the creation, assignment, or recognition of a right to any benefit payable with respect to a participant pursuant to a domestic relations order, except that paragraph (1) shall not apply if the order is determined to be a qualified domestic relations order. Each pension plan shall provide for the payment of benefits in accordance with the applicable requirements of any qualified domestic relations order.”

. Interestingly in Matter of Rogers the Court of Appeals affirmed without opinion the Appellate Division decision which correctly assumed that the Court of Appeals would overrule “a long line of decisions by this court, in the interests of uniformity, because the Supreme Court of the United States has recently decided contrariwise.” (Matter of Rogers, 296 NY 676, 678, supra [dissenting mem].)