OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The plaintiff bank, following a default, foreclosed the mortgage of the defendant Gowin. Thereafter, the bank moved for a deficiency judgment (RPAPL 1371). Three days prior to trial, Gowin transferred $100,000 from a personal investment account in a brokerage firm to his College Retirement Equities Fund retirement fund.
The transfer, of course, was without consideration and occurred during the pendency of an action to collect a debt owing by Gowin to the plaintiff. As a result of that transfer, *420 the deficiency judgment remains wholly unpaid. These facts are not contested. Accordingly, the transfer was fraudulent under New York law (Debtor and Creditor Law, §§ 273, 273-a, 274).
The Teachers Insurance and Annuity Association and the College Retirement Equities Fund (hereafter TIAA and CREF) are New York not-for-profit corporations which provide retirement insurance and annuities to members who are current or retired employees of colleges, universities and related organizations. Their purposes are to provide for the diversified investment of contributions by employers and employees, which are deposited with TIAA/CREF during the years of employment, and to pay benefits during the years of retirement based upon such accumulated contributions (L 1952, ch 124, § 2).
State law provides that no benefit provided by CREF shall be liable to attachment, garnishment or other process in order to pay any debt or liability of a retirement fund beneficiary (L 1952, ch 124, § 9). Similarly, Federal law provides that no plan benefit may be alienated (Employee Retirement Income Security Act, hereafter ERISA, 29 USC § 1056 [d] [1]).
CPLR 5205 exempts certain assets, held in trust, from the normal remedies available to creditors seeking to enforce money judgments. However, that exemption is unavailable where the asset is transferred within 90 days before the commencement of the action upon which the judgment is entered. It is also unavailable where the transfer is deemed fraudulent under the Debtor and Creditor Law. Here, both predicates for the loss of the exemption are present.
Nevertheless, TIAA/CREF argues that the generally governing provisions of CPLR 5205 (c) (5) are not applicable to CREF because a more specific New York statute (L 1952, ch 124) exempts the debtor’s $100,000 transfer. Moreover, the corporations contend, the Federal antialienation provisions of ERISA preempt any State law to the contrary.
We first examine the question of Federal law: The ERISA exemption has been the subject of two recent decisions by the United States Supreme Court. The first, Guidrey v Sheet Metal Workers Pension Fund (493 US 365), disapproved the judicial creation of generalized equitable exceptions to ERISA’s prohibition on the alienation of pension benefits, even where employee misconduct or malfeasance may have been involved. The second, Patterson v Shumate (504 US 753), *421 reiterated the Court’s position that the creation of equitable exceptions to the ERISA antialienation provision must be left to Congress.
These decisions raise questions about the continued reliability of the rationale adopted by our New York Court of Appeals in Planned Consumer Mktg. v Coats & Clark (71 NY2d 442). There, the Court held that ERISA does not preempt State laws enacted to prevent fraudulent transfers, provided the State legislation does not purport to regulate the operation of employee benefit plans subject to ERISA. However, the holdings in Guidrey and Patterson (supra) suggest that, where ERISA governs the transfer, the antialienation clause of that statute preempts State equitable exceptions, even though the State exemption does not affect the actual management or operation of the retirement fund.
The decisive question, therefore, is whether the Gowin transfer falls within the scope of ERISA. Both TIAA and CREF accept contributions, during the course of the member’s employment, in order to form a principal upon which benefits are calculated and disbursed after retirement. Here, the transfer by the debtor to CREF occurred well after the debtor’s retirement. Accordingly, the deposit was not the kind of installment payment which ERISA was designed to protect and which CREF was created to accept and invest. The $100,000 transferred to CREF by the debtor was a nonplan deposit which could be recalled by the depositor at will. In effect, CREF simply accepted a sum of money on terms similar to those Gowin might have obtained from any money manager.
ERISA was enacted to assure that vested benefits accrued during employment will remain inviolate in the absence of any equitable exception created by Congress (Patterson v Shumate, 504 US, at 765, supra). The recapture of the debtor’s nonplan and postretirement transfer to CREF could have no adverse effect upon the fund accumulated during the years of employment or the benefits payable after retirement because of that accumulation. We conclude that, under these circumstances, the Gowin fraudulent transfer falls outside the scope of ERISA and, therefore, that the holdings of the United States Supreme Court in Guidrey and Patterson (supra) do not govern.
The resolution of the remaining issues turns upon State law and State policy. The considerations which produced the *422 ruling in Planned Consumer Mktg. (71 NY2d 442, supra) apply with equal force to the case at bar. In both, the rights of a defrauded creditor must be weighed against the interests of a retirement plan beneficiary. In both, the facts compel the conclusion that the transfer was designed to defeat the creditor’s rights by fraud. Here, however, Gowin does not occupy the preferred status of a worker engaged in the building of a retirement corpus which, arguably, society has an interest in preserving in order to protect the beneficiary in old age.
Clearly, the New York Court of Appeals has the last word on matters of New York law, including the interpretation of New York statutes. Absent countervailing Federal law considerations, we are persuaded that the Court of Appeals would follow the Planned Consumer Mktg. logic, as applied to the ERISA antialienation clause, in respect to the nearly identical antialienation provisions of the New York statute (L 1952, ch 124, § 9).
Consequently, the relief sought by Tompkins County Trust Company against TIAA/CREF must be granted. The separate motion against Gowin is denied on grounds of mootness.