Harold BROSAMER, Appellant
(Defendant Below),

v.

Donald E. MARK and Cheryl A. Mark, Appellees (Plaintiffs Below),

and

Marion Independent Federal Credit Union, Appellee (Garnishment Defendant Below),

and

Bank One of Marion, Indiana, Appellee (Garnishment Defendant Below).

No. 27S02–9011–CV–700.

Supreme Court of Indiana.

Nov. 1, 1990.

Louis Rosenberg, UAW Legal Services Plan, Indianapolis, E. Dean Singleton, UAW–GM Legal Services Plan, Marion, for appellant.

SHEPARD, Chief Justice.

The question presented is whether the anti-alienation provision of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1056(d)(1) (1988), protects pension funds from garnishment after they are deposited in a pensioner's bank account. We hold that such funds are not protected.

Donald and Cheryl Mark sued Harold Brosamer in the Grant County Court seeking unpaid rent. On November 6, 1986, the trial court entered judgment against Brosamer for $718.00 plus costs. Brosamer did not pay. The plaintiffs instituted a proceeding supplemental leading to a hearing on September 24, 1987. The evidence at that hearing showed Brosamer's only regular income to be $583.00 per month from Social Security retirement benefits and $444.69 per month from General Motors pension benefits. Brosamer claimed that he owned no real estate and that all of his assets were exempt from execution.

On September 29, 1987, the clerk of the Grant County Court mailed garnishment interrogatories to Marion Independent Federal Credit Union, where Brosamer's General Motors pension benefits were directly deposited, and to Bank One of Marion, Indiana, where his Social Security benefits were directly deposited. The interrogato-

ries contained orders freezing the accounts. The trial court issued final orders of garnishment for each account on November 9, 1987.

The Court of Appeals held that Brosamer's Social Security benefits are exempt from legal process under 42 U.S.C. § 407(a) (1988), a provision of the Social Security Act, and reversed the trial court's garnishment of those funds. It held that his pension benefits are not similarly protected by ERISA and affirmed the trial court's garnishment of those funds. *Brosamer v. Mark* (1989), Ind.App., 540 N.E.2d 652. In doing so, the Court of Appeals expressly overruled its earlier contrary authority, *Perkins v. Kocher* (1988), Ind.App., 531 N.E.2d 231.

Brosamer petitions this Court for transfer only on the issue of whether ERISA protects his pension benefits from garnishment. We think the Court of Appeals was correct on the ERISA question and grant transfer to so hold.[1]

The ERISA provision in question, 29 U.S.C. § 1056(d)(1), states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Pension plans qualified under ERISA receive preferential federal tax treatment, and the relevant portion of the Internal Revenue Code echoes ERISA by providing: "A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated." 26 U.S.C. § 401(a)(13) (1988). These statutory provisions use the terms "alienated" and "assigned," which traditionally refer to voluntary transfers. However, the United States Supreme Court recently examined them in the context of the relevant Treasury regulation,[2] the legislative history,

1. The decision of the Court of Appeals concerning garnishment of funds received from Social Security is also correct. We adopt and incorporate by reference that opinion on this point. Ind. Appellate Rule 11(B)(3).

Of course, we join the Court of Appeals in disapproving the conclusion about garnishment

of ERISA benefits contained in *Perkins*, 531 N.E.2d at 234.

2. "Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attach-

and decisions by lower federal courts. It concluded that "the statutory restrictions on assignment or alienation of pension benefits apply to garnishment." *Guidry v. Sheet Metal Workers National Pension Fund,* 493 U.S. ——, ——, 110 S.Ct. 680, 685, 107 L.Ed.2d 782, 792 (1990).

Brosamer asks this Court to declare that pension benefits from a qualified ERISA plan continue to be protected from third party creditors even after they are deposited in a pensioner's bank account. Adopting this construction of 29 U.S.C. § 1056(d)(1) would run contrary to the legislative history and the weight of the relevant case law and stretch ERISA beyond the purposes declared by Congress in the statute itself.

### ERISA's Declarations and Its Legislative History

We think that both the words of the statute and the legislative history demonstrate Congressional intent to assure only that funds promised retirees by their private employers actually reach the retirees without being dissipated or diverted before they ever leave the hands of the plan's trustee.

We turn first to the Congressional findings and declaration of policy section of ERISA, 29 U.S.C. § 1001 (1988). Subsection (a) points out the extensive problems existing in private pension programs and states that the Act is intended to promote the setting of "minimum standards ... assuring the equitable character of such [pension] plans and their financial soundness." 29 U.S.C. § 1001(a). Subsections (b) and (c) summarize areas in which the standards will be set—disclosure and reporting, vesting of accrued benefits, funding, termination insurance, and standards of conduct, responsibility, and obligation for fiduciaries. 29 U.S.C. § 1001(b)–(c). The obvious focus of these declarations is protection of plan integrity.

The legislative history also emphasizes preserving the integrity of private pension plans. The report of the House Education and Labor Committee states that "the pri-

mary purpose of the bill is the protection of individual pension rights." H.R.Rep. No. 533, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639, 4639. The report demonstrates that the pension rights are to be protected through regulation of the plans:

> In broad outline, the bill is designed to:
> (1) establish equitable standards of plan administration;
> (2) mandate minimum standards of plan design with respect to the vesting of plan benefits;
> (3) require minimum standards of fiscal responsibility by requiring the amortization of unfunded liabilities;
> (4) insure the vested portion of unfunded liabilities against the risk of premature plan termination; and
> (5) promote a renewed expansion of private retirement plans and increase the number of participants receiving private retirement benefits.

*Id.* at 4640.

The report of the Senate Committee on Labor and Public Welfare parallels the House report, describing the provisions and purposes of ERISA as follows:

> The provisions of [ERISA] are addressed to the issue of whether American working men and women shall receive private pension plan benefits which they have been led to believe would be theirs upon retirement from working lives. It responds by mandating protective measures, and prescribing minimum standards for promised benefits.
>
> The purpose of [ERISA] is to prescribe legislative remedies for the various deficiencies existing in the private pension plan systems which have been determined by the Senate Subcommittee's comprehensive study of such plans.

S.Rep. No. 127, 93d Cong., 2d Sess., *reprinted in,* 1974 U.S.Code Cong. & Admin. News 4838, 4838.

The legislative history specifically describing § 1056(d)(1) follows the same theme. It focuses on protecting the pen-

---

ment, garnishment, levy, execution or other legal or equitable process."

Treas.Reg. § 1.401(a)–13(b)(1) (as amended in 1988); 26 C.F.R. § 1.401(a)–13(b)(1) (1990).

sion funds in the plans to ensure their actual availability for distribution:

> To further ensure that the *employee's accrued benefits are actually available for retirement purposes,* the committee bill also contains a provision requiring the plan to provide that benefits may not be assigned or alienated.

H.R.Rep. No. 807, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4670, 4734 (emphasis added).

### Case Law

We think that the available federal case law supports the conclusion that Congress intended to assure pensioners receive their benefits. It does not demonstrate that Congress desired to make pensioners judgment proof by legislative decree.

The proposition that ERISA is intended to protect plans only to ensure that benefits will be available for distribution is supported by the opinion of the Fourth Circuit in *Tenneco, Inc. v. First Virginia Bank of Tidewater,* 698 F.2d 688 (4th Cir.1983). The *Tenneco* court held that "benefits in the hands of the fiduciary are beyond the reach of garnishment" by a third party creditor even though the benefits in that case were payable in a lump sum at the request of the debtor, a recently terminated employee of a Tenneco subsidiary. *Id.* at 689. In so holding the Court stated that benefits payable from an ERISA-qualified plan are beyond the reach of garnishment regardless of the method by which they are payable. *Id.* at 690. The Court said quite the opposite, however, about garnishing money that the plan had already paid to the ex-employee:

> Sweeney [the employee] claims that any funds or securities whose origin may be traced to a preretirement draw from an ERISA approved plan are forever immune from attachment by creditors.
> The evidence discloses that Sweeney made a preretirement withdrawal and that he did not roll over the proceeds by investing them in another ERISA approved account within the 60–day period allowed for this purpose. The district court denied the relief which Sweeney

requested, holding that although the funds originated in an ERISA account, they were not exempt from garnishment under the circumstances disclosed by this record. No provision of ERISA supports Sweeney's claim. We affirm the district court's denial of relief.

*Id.* at 690–91. The Fourth Circuit clearly saw ERISA's anti-garnishment protection ending when the benefits were *actually paid* to the employee and not rolled over into another pension plan within the time allotted.

The idea that ERISA's anti-garnishment protection ends when the benefits are actually paid is reflected in the U.S. Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The question in *Mackey* was whether Georgia statutes allowing garnishment of funds from ERISA employee welfare benefit plans were preempted by the federal statute governing the plans. *Id.* at 827, 108 S.Ct. at 2184, 100 L.Ed.2d at 842. In its decision, the Court said the following about ERISA-qualified employee pension benefit plans:

> Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) [29 U.S.C. § 1056(d)(1) ] bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans.... Section 206(d)(1) bars the assignment or alienation of pension plan benefits, and thus prohibits the use of state enforcement mechanisms *only* insofar as they prevent those benefits *from being paid to plan participants.*

*Id.* at 836, 108 S.Ct. at 2188–89, 100 L.Ed.2d at 848 (emphasis added in part). Although this passage is clearly dicta, it is consistent with the decision in *Tenneco* and with ERISA's legislative history. All three assert that the purpose of § 1056(d)(1) is to keep pension benefits flowing from the plan administrator to the recipients.

Recognizing the disarray in private pension plans which caused many retirees to lose the benefits promised them, Congress adopted ERISA to preserve the integrity of pension plans. There is nothing to indicate that Congress intended to provide pension beneficiaries a shield against the legitimate demands of creditors who have provided them with shelter or food. We refuse to stretch ERISA to make Brosamer and other beneficiaries like him judgment proof. Consequently, we hold that 29 U.S.C. § 1056(d)(1) protects ERISA-qualified pension benefits from garnishment only until they are received by a beneficiary.

We affirm that part of the trial court's order garnishing Brosamer's account at the Marion Federal Credit Union.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.