**In re Linda MILLER, Debtor.**

**No. 08–22988 JPK.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division.

Aug. 5, 2010.

Stacia L. Yoon, Esq., Genetos, Retson & Yoon, LLP, Merrillville, IN, for the Chapter 7 Trustee.

Kevin M. Schmidt, Esq., Merrillville, IN, for the Debtor, Linda Miller.

*MEMORANDUM OF DECISION REGARDING THE CHAPTER 7 TRUSTEE'S MOTION FOR TURNOVER*

J. PHILIP KLINGEBERGER,
Bankruptcy Judge.

This contested matter arises from a Motion for Turnover ("Motion") filed on December 10, 2009 by Stacia Yoon as Trustee of the Chapter 7 bankruptcy estate of Lin-

da Miller ("Trustee"), and the objection of the Debtor ("Miller") thereto. The Motion requests that Miller turn over to the Trustee the following: Wells Fargo check number 533527467 in the amount of $5,500.00; the bankruptcy estate's share of Miller's tax refund in the amount of $488.32; and funds held in a bank account in the amount of $702.27. On December 30, 2009, Miller, by counsel, filed a response to the Motion acknowledging that the tax refund and the funds in the bank account should be turned over to the Trustee, but objecting to the turnover of the Wells Fargo check in the amount of $5,500.00 on the basis that "the check is an exempt asset as it carries the exempt status to the date of filing." [1]

On March 2, 2010, the parties filed their "Stipulation of Fact and Contested Issues" pursuant to the court's order entered on January 26, 2010. This stipulation constitutes the record before the court to determine the parties' contested matter.

The Trustee's Motion for Turnover, filed pursuant to 11 U.S.C. § 542(a), is governed by the provisions of Fed.R.Bankr.P. 9014. The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b); 28 U.S.C. § 157(a) and (b)(1); and N.D.Ind.L.R. 200.1. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(E).

### THE FACTUAL RECORD/ISSUES PRESENTED

The factual record pertinent to the motion has been stipulated by the Trustee and Miller and provides as follows (the "Stipulation"):

Pursuant to the order of this Court, comes now the Trustee, Stacia L. Yoon,

by counsel, and the Debtor, Linda Miller, by counsel, Kevin Schmidt, and submit their Stipulation of Fact and Contested Issues:

1. *Stipulated Facts:*

a. On September 9, 2008, the Debtor obtained a loan from the Schneider National, Inc. 401(k) Savings & Retirement Plan ("Schneider") in the amount of $5,500.00.

b. On September 10, 2008, Schneider issued a check to the Debtor in the amount of $5,500.

c. On September 11, 2008, the Debtor filed her Chapter 7 petition.

d. On September 20, 2008, the Debtor deposited the check into her Centier account.

2. *Trustee Yoon's Contentions:*

a. The $5,500.00 check issued by Schneider represents proceeds from a loan.

b. The check is an asset of the bankruptcy estate.

3. *Debtor, Linda Miller's Contentions:*

a. The $5,500.00 check issued by Schneider retains its exempt status as a 401k loan under I.C. § 34–55–10–2(c)(6).

### LEGAL ANALYSIS

 Indiana has opted out of the federal exemption scheme stated in 11 U.S.C. § 522(d) and has established its own statutory exemptions; *See, Matter of Salzer,* 52 F.3d 708, 712 (7th Cir.1995). The Trustee does not dispute that the $5,500.00 at issue, *prior* to being distributed to Miller in the form of a 401(k) loan, was an exempt asset of this bankruptcy estate. [2] The is-

---

1. *See,* Response to Trustee's Motion for Turnover filed on December 30, 2009 (Docket Entry # 41).

2. Miller's interest in the $5500.00 check at issue is property of her Chapter 7 bankruptcy estate under 11 U.S.C. § 541(a), aside from the fact that the $5,500.00 check was received

sue in this case is whether the funds *after* being distributed to Miller in the form of a loan retain their exempt character. The resolution of this issue hinges on this court's interpretation of Indiana law, namely I.C. 34–55–10–2(c)(6). This provision provides in pertinent part:

(c) The following property of a debtor domiciled in Indiana is exempt:

(6) *An interest,* whether vested or not, *that the debtor has in a retirement plan or fund* to the extent of:

(A) contributions, or portions of contributions, that were made to the retirement plan or fund by or on behalf of the debtor or the debtor's spouse:

(i) which were not subject to federal income taxation to the debtor at the time of the contribution; or

(ii) which are made to an individual retirement account in the manner prescribed by Section 408A of the Internal Revenue Code of 1986;

(B) earnings on contributions made under clause (A) that are not subject to federal income taxation at the time of the levy; and

(C) roll-overs of contributions made under clause (A) that are not subject to federal income taxation at the time of the levy. (Emphasis supplied).

The issue is whether the foregoing exemption statute is broad enough to apply to distributions made from a retirement plan within the provisions of the statute which are in the possession of the debtor *dehors* the plan. The answer is that it is not.

 Because Indiana has "opted out" with respect to exemptions applicable in bankruptcy cases in accordance with 11 U.S.C. § 522(b)(1), construction of the

statute under which the exemption was claimed is a matter of Indiana law, and not of federal law. The court notes that the ultimate purpose of statutory construction is to ascertain and give meaning to the intent of the legislative body which enacted the statute. As stated by the Indiana Supreme Court in *Spaulding v. International Bakers Services, Inc., Ind.,* 550 N.E.2d 307, 309 (1990):

In reviewing a statute, our foremost objective is to determine and effect legislative intent. *Park 100 Dev. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220, 222. Where possible, every word must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *Foremost Life Ins. Co. v. Department of Ins.* (1980), 274 Ind. 181, 186, 409 N.E.2d 1092, 1096. We examine and interpret a statute as a whole, giving words common and ordinary meaning "and not overemphasizing a strict literal or selective reading of individual words." *Id.*

 The principal rule of statutory construction which must be applied to I.C. 27–1–12–14(e) is that the legislature's intent controls. Because the focus of interpretation is an exemption statute, in ascertaining that intent, statutes of exemption are to be construed in favor of the debtor claiming the exemption; *See, Pomeroy v. Beach,* Ind., 149 Ind. 511, 49 N.E. 370, 372 (1898); *Union National Bank of Muncie v. Finley,* Ind., 180 Ind. 470, 103 N.E. 110, 114 (1913); *In the Matter of Zumbrun,* Ind., 626 N.E.2d 452, 455 (1993). However, when a statute is clear, there is no room for construction, and any principle of liberal construction gives way to clearly expressed legislative intent; *See, Sue Yee Lee,* Ind.App., 410 N.E.2d 1319 (1980);

pre-petition but was cashed by Miller post-petition; *See, Milligan v. Trautman,* 340 B.R.

773 (Bankr.W.D.Tex.2006), *aff'd* 496 F.3d 366 (5th Cir.2007).

*B.K.C. v. State*, Ind.App., 781 N.E.2d 1157 (2003); *Robinson v. Gazvoda*, Ind.App., 783 N.E.2d 1245 (2003).

Under the foregoing principles, the property protected by the statute is the *"interest ... that the debtor has in a retirement plan or fund"* (emphasis supplied). When a distribution is made from the fund to a participant, that distribution is no longer *in* the plan or the fund—it becomes property in the possession of the participant outside of the plan or fund. That is what the statute states, and it is not ambiguous in doing so. Thus, the exemption protection of I.C. 34–55–10–2(c)(6) ceases when a distribution is made to a plan participant.

The foregoing result is fully supported by the decision of the Indiana Supreme Court in the case of *Brosamer v. Marion Independent Credit Union, et al.*, Ind., 561 N.E.2d 767 (1990). The issue in *Brosamer* was "whether the anti-alienation provision of the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1056(d)(1) (1988), protects pension funds from garnishment after they are deposited in a pensioner's bank account", 561 N.E.2d at 768. The court stated:

We think that the available federal case law supports the conclusion that Congress intended to assure pensioners receive their benefits. It does not demonstrate that Congress desired to make pensioners judgment proof by legislative decree.

The proposition that ERISA is intended to protect plans only to ensure that benefits will be available for distribution is supported by the opinion of the Fourth Circuit in *Tenneco, Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688 (4th Cir.1983). The *Tenneco* court held that "benefits in the hands of the fiduciary are beyond the reach of garnishment" by a third party creditor even

though the benefits in that case were payable in a lump sum at the request of the debtor, a recently terminated employee of a Tenneco subsidiary. *Id.* at 689. In so holding the Court stated that benefits payable from an ERISA-qualified plan are beyond the reach of garnishment regardless of the method by which they are payable. *Id.* at 690. The Court said quite the opposite, however, about garnishing money that the plan had already paid to the ex-employee:

Sweeney [the employee] claims that any funds or securities whose origin may be traced to a preretirement draw from an ERISA approved plan are forever immune from attachment by creditors.

The evidence discloses that Sweeney made a preretirement withdrawal and that he did not roll over the proceeds by investing them in another ERISA approved account within the 60–day period allowed for this purpose. The district court denied the relief which Sweeney requested, holding that although the funds originated in an ERISA account, they were not exempt from garnishment under the circumstances disclosed by this record. No provision of ERISA supports Sweeney's claim. We affirm the district court's denial of relief.

*Id.* at 690–91. The Fourth Circuit clearly saw ERISA's anti-garnishment protection ending when the benefits were *actually paid* to the employee and not rolled over into another pension plan within the time allotted.

The idea that ERISA's anti-garnishment protection ends when the benefits are actually paid is reflected in the U.S. Supreme Court's decision in *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). The question in *Mackey* was whether Georgia statutes

allowing garnishment of funds from ERISA employee welfare benefit plans were preempted by the federal statute governing the plans. *Id.* at 827, 108 S.Ct. at 2184, 100 L.Ed.2d at 842. In its decision, the Court said the following about ERISA-qualified employee pension benefit plans:

> Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) [29 U.S.C. § 1056(d)(1)] bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans … Section 206(d)(1) bars the assignment or alienation of pension plan benefits, and thus prohibits the use of state enforcement mechanisms *only* insofar as they prevent those benefits *from being paid to plan participants.* *Id.* at 836, 108 S.Ct. at 2188–89, 100 L.Ed.2d at 848 (emphasis added in part).

Although this passage is clearly dicta, it is consistent with the decision in *Tenneco* and with ERISA's legislative history. All three assert that the purpose of § 1056(d)(1) is to keep pension benefits flowing from the plan administrator to the recipients.

Recognizing the disarray in private pension plans which caused many retirees to lose the benefits promised them, Congress adopted ERISA to preserve the integrity of pension plans. There is nothing to indicate that Congress intended to provide pension beneficiaries a shield against the legitimate demands of creditors who have provided them with shelter or food. We refuse to stretch ERISA to make Brosamer and other beneficiaries like him judgment proof.

Consequently, we hold that 29 U.S.C. § 1056(d)(1) protects ERISA-qualified pension benefits from garnishment only until they are received by a beneficiary.

We affirm that part of the trial court's order garnishing Brosamer's account at the Marion Federal Credit Union.

*Id.* at 770–71.

Thus, under federal law as construed by the Indiana Supreme Court, a participant's interest in a retirement plan or fund is an interest in the plan or fund subject to ERISA's anti-alienation protections only so long as a portion of that interest has not been distributed to the participant. When the participant receives a distribution, the money/fund in the hands of the participant loses its character as being an interest in the plan or fund. This is exactly what I.C. 34–55–10–2(c)(6) states, and it is clear to the court that the Indiana Supreme Court would construe 34–55–10–2(c)(6) as restrictively.

There is a pattern in decisions of courts which have determined the scope of Indiana's exemption statutes in relation to the exempt nature of distributions in the hands of a recipient from an otherwise exempt fund or source. As the court addressed in *In re Norwood,* Case Number 08–20259 (Memorandum of Decision Concerning Contested Matter, entered as record entry number 30 on October 6, 2009 [pages 7–10] ):

> The exemption at issue arises under Indiana law. The scope of a statutory exemption is to be interpreted liberally in favor of the debtor; *Union Nat. Bank of Muncie v. Finley,* Ind. [180 Ind. 470] 103 N.E. 110, 114 (1913); *see, In the Matter of Zumbrun,* Ind., 626 N.E.2d 452, 455 (1993). In this context, the manner of construction of exemptions under both state and federal law is parallel. As stated by this court in *In re*

*Kuhn,* 322 B.R. 377, 385–386 (Bankr. N.D.Ind.2005):

The Seventh Circuit Court of Appeals, in addressing Illinois' ambiguous *statutory exemptions* of personal property in *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985), stated that "this circuit and the courts of Illinois have consistently held that *personal property exemption statutes* should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors." (emphasis supplied). In more pertinent part, the court wrote:

This clear legislative intent to grant protections to debtors and the court's liberal construction of exemption statutes convince us that a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor.

*Id.* See also, *In re Owen,* 2002 WL 531570 at *5 (S.D.Ill.) ["Generally, ambiguous bankruptcy exemption provisions should be construed in favor of the debtor"]; *In re De Vries Jr.,* 76 B.R. 917 (Bankr.N.D.N.Y.1987) ["Code § 522(b), and those state exemption statutes adopted pursuant thereto, are to be liberally construed in order to effectuate the debtor's 'fresh start' "]; *In re Vale,* 110 B.R. 396, 400 (Bankr.N.D.Ind.1989) ["Indiana exemption laws are liberally construed to affect their intent and purpose"]; *In the Matter of South Bend Community School Corp.,* 215 B.R. 1012, 1015 (N.D.Ind.1997) [". . . if it is possible, to construe an exemption statute in ways that are both favorable and unfavorable to the debtor, then favorable method should be chosen"].

Indiana has "opted out" of the federal bankruptcy exemptions provided by 11 U.S.C. § 522(d), pursuant to 11 U.S.C. § 522(b)(2); I.C. 34–55–10–1. The exemption with respect to the earned income credit is stated in I.C. 34–55–10–2(c)(11) as follows:

(c) The following property of a debtor domiciled in Indiana is exempt:

. . .

(11) The debtor's interest in a refund or a credit *received or to be received* under section 32 of the Internal Revenue Code of 1986. (emphasis supplied)

The issue in this case has been phrased in terms of whether an exempt asset deposited into a bank account retains its character as an exempt asset upon deposit. This is a sub-issue of a more expansive issue, which is whether an item of property, exempt from creditor process with respect to the debtor's interest in that asset when in the hands of a third person, retains its character as exempt when payment of the item is made to the debtor.

The issue before the court is the scope of a state exemption, and thus state law—not federal law—applies to determination of the issue before the court. That being the case, it is still instructive to consider similar exemption issues in the context of the scope of federal exemption statutes. The court has recently issued a decision in the case of *In re Stephanie S. Spolarich* (case number 08–23438 in the United States Bankruptcy Court for the Northern District of Indiana, Hammond Division) in which the scope of the exemption provided for Social Security payments by 42 U.S.C. § 407 was determined to allow an exemption for Social Security benefits despite the benefits having been paid to the debtor by the Internal Revenue Ser-

vice as a sort of "tax refund" under 26 U.S.C. § 3402(p). 42 U.S.C. § 407 states the following:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and *none of the moneys paid or payable* or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

(c) Nothing in this section shall be construed to prohibit withholding taxes from any benefit under this subchapter, if such withholding is done pursuant to a request made in accordance with [section 3402(p)(1) of the Internal Revenue Code of 1986 26 U.S.C.A. § 3402] by the person entitled to such benefit or such person's representative payee. (emphasis supplied)

Based upon the breadth of the foregoing statute, Indiana courts have held that Social Security benefits are totally exempt, even if deposited into a bank account; *Perkins v. Kocher*, Ind.App., 531 N.E.2d 231 (1988); *Brosamer v. Mark*, Ind., 561 N.E.2d 767 (1990) [*affirming Brosamer v. Mark*, Ind.App., 540 N.E.2d 652 (1989)]. The court held in *Spolarich* that the "refund" was exempt under 42 U.S.C. § 407, due in part to the "paid or payable" language of that statute.

Indiana courts have had occasion to construe other exemption provisions in the context in which property, exempt in the hands of a third person, has then come in to the hands of the debtor. In *Sohl v. Wainwright Trust Co.*, Ind.App. [76 Ind. App. 198] 130 N.E. 282 (1921), the court determined that a government pension, although exempt from creditor process in the hands of the government, did not retain its exempt status when pension benefits had been paid to the pensioner [the specific wording of the exemption statute at issue is not provided in the decision]. *See also, Faurote v. Carr*, 108 Ind. 123, 9 N.E. 350 (1886). In *Brosamer v. Mark*, Ind., 561 N.E.2d 767 (1990), the Indiana Supreme Court determined that ERISA's anti-garnishment provision did not protect pension benefits, paid from an ERISA-qualified plan, in the hands of the pensioner, based upon an anti-alienation provision in ERISA which states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated" [29 U.S.C. § 1056(d)(1) ].[5]

Thus, from the foregoing, Indiana courts' determination of the scope of an exemption with respect to property upon a recipient's receipt of exempt property is determined, perhaps obviously, by the language of the exemption statute itself.[6]

FN5. In *Brosamer v. Mark*, Ind.App. 540 N.E.2d 652, the Indiana Court of Appeals contrasted the ERISA anti-garnishment provision to a similar provision in the Railroad Retirement Act, which states:

"[N]o annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment or other legal process under any circumstances whatsoever...." (emphasis supplied)

45 U.S.C. § 231m(a). The implicit holding of the court is that the breadth of the phrase "under any circumstances whatsoever" was to be contrasted to ERISA's anti-garnishment provision in the context of exemption from execution once benefits were received by the person entitled to receive them.

FN6. In *In re Weaver*, 93 B.R. 172 (N.D.Ind. 1988), the United States District Court for the

Northern District of Indiana reversed a bankruptcy court decision with respect to exemption of Indiana Workmen's Compensation benefits upon payment of those benefits to the worker. In distinguishing workmen's compensation benefits from other forms of exempt benefits, the court stated:

> The trustee's first argument is that the exemption, which he concedes is afforded workmen's compensation payments, does not apply to cash in the hands of a debtor. Under Indiana law, money in the hands of a debtor stands on the same footing as any other money held by the debtor, even if the money is derived from exempt payments. *See Sohl v. Wainwright Trust Co.*, 76 Ind.App. 198, 130 N.E. 282 (1921); *Faurote v. Carr*, 108 Ind. 123, 9 N.E. 350 (1886). Under this case law, the legislature can only grant exemptions in proceeds *by explicitly stating that the proceeds are exempt.* Exemptions afforded to aged, blind and disabled persons, for example, provide that "none of the money *paid or payable* under the provisions of this chapter shall be subject to execution, levy, attachment,...." *See* I.C. § 12–1–5–12 (1981); I.C. § 12–1–6–12 (1981); I.C. § 12–1–7.1–14 (1981). *The life insurance statute is just as explicit. See* I.C. § 27–1–12–14 (1985). Money paid by a fraternal benefits society is exempted *"either before or after payment by the society."* I.C. 27–11–6–3 (1985). Where the legislature of Indiana has given exemptions it has chosen statutory language which is clear and unequivocal.
>
> The workmen's compensation statute at issue in this case, I.C. § 22–3–2–17 (1929), uses the term compensation as a term of art. The statute provides: "No claims for compensation under this act shall be assignable, and all compensation and claims therefor shall be exempt from all claims of creditors." I.C. § 22–3–2–17 (1929). An obligation to compensate is discharged upon payment. (Emphasis supplied.)

93 B.R. 172, 174. Again, this decision focuses upon the breadth of the exemption statute in relation to exempt property in the hands of a recipient/debtor.

Based upon the foregoing, there is no clear, explicit statement in 34–55–10–2(c)(6) that the exemption provided for in an interest in a retirement fund applies to a distribution from such a fund in the hands of the participant. The distribution to which the Trustee's turnover motion is directed is not exempt under 34–55–10–2(c)(6).

The court has been unable to find any authority which differentiates a distribution made to a retirement plan participant as a loan from any other distribution made to a participant. In fact, in many of the cases which determine that a distribution from an ERISA qualified plan can be garnished, the monies at issue were from the debtor's obtaining a 401(k) loan; *See e.g., Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville*, 16 F.3d 52 (3rd Cir.1994); *Velis v. Kardanis*, 949 F.2d 78 (3rd Cir.1991); *In re McDonald*, 2003 WL 23211570 (Bankr.M.D. North Carolina 2003). In *Velis*, the Chapter 11 debtor argued that the proceeds of the loans he obtained from his IRA, Keogh plan and pension plan were exempt assets of his bankruptcy estate. The court disagreed and stated as follows:

> With respect to the pension plan and the Keogh plan, we conclude that, to the extent the assets in these plans have already been distributed to or for the benefit of the debtor, the debtor no longer has available the protections which might otherwise have been accorded under the ERISA statute. Section 541(c)(2) requires recognition of restrictions upon transfer which are enforceable by law; it does not operate to require non-recognition of transfers which have already occurred, nor does it apply to assets in the possession of the debtor without restrictions. Here, it is undisputed that, shortly after the bankruptcy petition was filed, the debtor withdrew substantially all of the funds in his pension plan, Keogh plan and IRA, and used the money to purchase the cooperative apartments—not as pension plan assets, or as part of the debtor's estate, but for his own purposes. To that extent, there can be no doubt that these

monies came into the unrestricted possession of the debtor, and were no longer pension assets. The fact that, months later, the bankruptcy court retroactively authorized the debtor to "borrow" this money and to provide liens against the real estate purchased, cannot be regarded as establishing that no distribution occurred. The court's order was stated to be without prejudice to the contentions of the parties in this litigation; in effect, the order merely preserved the status quo, pending resolution of this dispute.

Both the bankruptcy court and the district court relied heavily upon these "borrowings" as demonstrating that this was really a self-settled revocable trust arrangement, not entitled to spendthrift trust protection under New Jersey law. They concluded that all of the assets of the pension plan, Keogh plan and IRA, including future contributions and accretions, were part of the debtor's estate and available to creditors. For the reasons discussed above, we agree that, to the extent distributions were made to or for the benefit of the debtor, those assets (or, in the context of this case, their equivalent value in liens against the real estate) are part of the debtor's estate. But, as to any undistributed assets in the pension plan and Keogh plan, these assets may be excluded under § 541(c)(2) unless there is some other basis for challenge than is disclosed in this record.

*Velis,* 949 F.2d at 82–83.

The court determines that the distribution to Miller in the amount of $5,500.00 in the form of a 401(k) loan is not exempt under I.C. 34–55–10–2(c)(6), and that the Trustee's turnover motion should be granted.

IT IS ORDERED, ADJUDGED AND DECREED that the Trustee's Motion for Turnover filed on December 10, 2009 is hereby granted, and that the Debtor Linda Miller shall turn over to the Trustee the property which is the subject of that motion within forty-five (45) days of the entry of this order.