**In re Margaret Naomi KING, Debtor.**

**No. 13–20884 JPK.**

United States Bankruptcy Court, N.D. Indiana, Hammond Division.

Signed March 28, 2014.

---

9. A preliminary pretrial conference will be scheduled by separate order.

Kenneth A. Manning, Kenneth A. Manning, Ch.7 Trustee, Dyer, IN, Kimberly A.

Mouratides, Manning & Gonzalez, P.C., Dyer, IN, for Kenneth A. Manning, Trustee.

Christopher R. Schmidgall, Merrillville, IN, for Debtor.

*MEMORANDUM OF DECISION DETERMINING TRUSTEE'S OBJECTION TO THE DEBTOR'S EXEMPTIONS*

J. PHILIP KLINGEBERGER, Bankruptcy Judge.

This Chapter 7 case was initiated by a voluntary petition filed by the debtor Margaret Naomi King ("King") on March 22, 2013. On June 3, 2013, Kenneth A. Manning, as Trustee of the Chapter 7 bankruptcy estate of Margaret Naomi King ("Trustee") filed an objection to the debtor's exemptions [record # 20]. On June 21, 2013, King, by counsel, filed a response to the Trustee's objection [record # 23]. The Trustee objected to King exempting $5,891.00 as an earned income credit pursuant to I.C. § 34–55–10–2(c)(11), on the basis that King as of the petition date was no longer in possession of these funds. Also, there was a pre-petition garnishment on King's bank account at 1st Midwest Bank in the amount of $3,138.63. This garnishment was released post-petition by the judgement-creditor, Credit Acceptance Corporation. In the objection the Trustee took the position that the foregoing was not an exempt asset of the bankruptcy estate and could be fully administered. In her response, King asserted that this entire amount could be traced back as the earned income credit ("EIC") portion of a tax refund that was previously deposited into her bank account.[1] It is these funds that are the source of the dispute between the parties and the issue is to what extent, if any, King can exempt the $3,138.63 as an earned income credit.

On August 9, 2014, a conference was held with the court and it was determined that this matter would be adjudicated on a stipulated record. Pursuant to an order of the court entered on August 23, 2013, the parties filed a stipulation of facts, contentions of law and exhibits on September 24, 2013 (the "Stipulation"). This issue was fully briefed as of November 1, 2013. The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and (b)(1), and N.D.Ind. L.R. 200.1(a)(1) and (2). This contested matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

The facts of this case are best summarized by the Stipulation filed by the parties:

### FACTS

1. Margaret Naomi King filed a voluntary Chapter 7 petition March 22, 2013.

2. On or about January 29, 2013, Margaret Naomi King filed IRS form 1040A for the tax calendar year 2012.

3. The IRS tax return claimed and asserted a tax refund of $8,548, consisting of:

W–2 withholdings of $1,010

Earned Income Credit of $5,891

Additional Child Tax Credit of $1,647

4. The IRS return was filed by and through the H & R Block Tax Group.

5. Prior to receipt of any tax refund, Margaret Naomi King fully assigned all her right, title, and interest in the claimed $8,548 tax refund to H & R Block Tax Group, pursuant to the agree-

---

1. In the response, King states that prior to the garnishment there was an intervening deposit into the account in the amount of $497.37. However, there were actually two deposits and this will be discussed further *infra*.

ment with H & R Block, for the specific purpose of the Refund Anticipation Check.

6. H & R Block filed Margaret Naomi King's taxes, and received her refund check by deposit into the Refund Anticipation Check account created specifically for Debtor.

7. The refund check was deposited into a bank account which was opened for Margaret Naomi King by H & R Block, with H & R holding exclusive control over the account, for the benefit of Debtor.

8. H & R Block withdrew the amount Margaret Naomi King owed them for preparing her taxes from this account plus other service charges, then direct deposited the remaining funds into Debtor's 1st Midwest account.

9. On February 8, 2013, the sum of $8,196.55 was deposited in Margaret Naomi King's personal checking account at 1st Midwest Bank by H & R Block.

10. On February 8, 2013, Margaret Naomi King withdrew the sum of $3,000 from her 1st Midwest Bank Account.

11. On February 13, 2013, the sum of $3,138.63 was debit memo (i.e. frozen) from the 1st Midwest Bank Account; this was the result of a garnishment by Margaret Naomi King's judgment creditor Credit Acceptance Corporation.

12. After the commencement of this case, Credit Acceptance Corporation filed a Motion to Release Hold on Bank Account on April 5, 2013 and notified 1st Midwest Bank, who released the frozen funds.

13. Debtor is currently in possession and control of the $3,138.63 released by 1st Midwest Bank.

■ At no time, prior to the commencement of this case, did Debtor claim or assert any exemptions pursuant to I.C. 34–55–10–6 and I.C. 34–55–10–12 in the State Court Case.

### STATEMENTS OF LAW

1. Federal and State EIC funds are exempt under I.C. 34–55–10–2(c)(11).

2. Amounts from tax refunds other than EIC funds are not exempt under Indiana law.

3. Non-exempt funds in debtor's bank accounts over the exemption amount set by the state as of the date of filing must be turned over to the Trustee.

### CONTENTIONS OF LAW

1. The Trustee contends that the $3,138.63 released by Credit Acceptance Corporation now in possession of Debtor is non-EIC funds, property of the Estate, and must be turned over to the Trustee.

2. Debtor contends the $3,138.63 released by Credit Acceptance Corporation is EIC credit proceeds, exempt property of the estate, and should not be turned over to the Trustee.

3. Trustee contends that the nature of the funds changed when they were deposited into a bank account opened and controlled exclusively by a third party (H & R Block), and then later transferred to the Debtor.

4. Debtor contends that funds were deposited into a bank account opened by a third party (H & R Block), for the specific purpose of depositing her tax refund in order to pay preparation and various other fees, thereby creating an account holding funds in trust for Debtor's benefit.

5. The Trustee contends that by assigning the entire amount of her tax refund to H & R Block and that third party receiving the Debtor's refund; the funds became a refund to Debtor by H

& R Block of amounts overpaid and not due under the Refund Anticipation Check agreement between Debtor and H & R Block.

6. Debtor contends that after the H & R Block account was created for her benefit; she retained an interest in the account consistent with the documents creating the account; and said tax refunds were not commingled with other funds and therefore specifically traceable back to Debtor's tax refund.

7. The Trustee contends that under the Refund Anticipation Check contract, the funds Debtor received from H & R Block were characterized not as tax refund funds but rather "Refund Anticipation Check" funds, which changes the nature of the funds by agreement of the parties.

8. The Trustee contends that Debtor made no objection or claim of exemption of the funds in the state court proceeding, thereby waving her claim of exemption under I.C. 34–55–10–6 and I.C. 34–55–10–12.

9. Debtor contends that she did not waive her claim of exemption under I.C. 34–55–10–6 and I.C. 34–55–10–12.

### EXHIBITS

Attached are complete copies of:

1. Margaret Naomi King's 2012 Federal and State tax returns. (redacted)

2. 1st Midwest Bank checking account of Margaret Naomi King, Acct 1816 for the months/period January 1, 2013 through April 15, 2013. (redacted)

3. Margaret Naomi King's RAC contract and disclosure with H & R Block.

The first place to start is with the exemption statute at issue. The earned income credit exemption is provided by I.C. § 34–55–10–2(c)(11) and states as follows: [2]

(c) the following property of a debtor domiciled in Indiana is exempt:

(11) The debtor's interest in a refund or a credit received or to be received under the following:

(A) Section 32 of the Internal Revenue Code of 1986 (the federal earned income tax credit),

(B) IC 6–3.1–21–6 (the Indiana earned income tax credit)

■ The scope of a statutory exemption is to be interpreted liberally in favor of the debtor; *Union Nat. Bank of Muncie v. Finley,* 180 Ind. 470, 103 N.E. 110, 114 (1913); *See, In the Matter of Zumbrun,* Ind., 626 N.E.2d 452, 455 (1993). As stated by this court in the case of *In re Kuhn,* 322 B.R. 377, 385–386 (Bankr.N.D.Ind. 2005):

The Seventh Circuit Court of Appeals, in addressing Illinois' ambiguous *statutory exemptions* of personal property in *In re Barker,* 768 F.2d 191, 196 (7th Cir.1985), stated that "this circuit and the courts of Illinois have consistently held that *personal property exemption statutes* should be liberally construed in order to carry out the legislature's purpose in enacting them—to protect debtors." (emphasis supplied). In more pertinent part, the court wrote:

This clear legislative intent to grant protections to debtors and the court's liberal construction of exemption statutes convince us that a case such as this one, where an exemption statute might be interpreted either favorably or unfavorably vis-a-vis a debtor, we should interpret the statute in a manner that favors the debtor.

---

**2.** Pursuant to 11 U.S.C. § 522(b)(2), Indiana "opted out" of the federal bankruptcy exemptions provided by 11 U.S.C. § 522(d).

*Id. See also, In re Owen,* 2002 WL 531570, at \*5 (S.D.Ill.) ["Generally, ambiguous bankruptcy exemption provisions should be construed in favor of the debtor"]; *In re De Vries Jr.,* 76 B.R. 917 (Bankr.N.D.N.Y.1987) ["Code § 522(b), and those state exemption statutes adopted pursuant thereto, are to be liberally construed in order to effectuate the debtor's 'fresh start' "]; *In re Vale,* 110 B.R. 396, 400 (Bankr.N.D.Ind.1989) ["Indiana exemption laws are liberally construed to affect their intent and purpose"]; *In the Matter of South Bend Community School Corp.,* 215 B.R. 1012, 1015 (N.D.Ind.1997) ["... if it is possible, to construe an exemption statute in ways that are both favorable and unfavorable to the debtor, then favorable method should be chosen"].

■ The plain language of I.C. § 34–55–10–2(c)(11) is extremely broad and exempts the *"debtor's interest in a refund or a credit received or to be received"* under Section 32 of the Internal Revenue Code. In the case of, *In re: Shashunte Jameca Norwood,* Case No. 08–20259, the court found that when an earned income credit has been received by a debtor and deposited into a bank account pre-petition, the amount deposited retains its exempt status under I.C. 34–55–10–2(c)(11) as long as it is traceable.[3]

■ In the case at bar, the Trustee's arguments mainly focus on the nature of the transaction underlying the refund anticipation check, i.e. the deposit of the refund into H & R Block's bank account. The Trustee first posits that the tax refund became something other than a tax refund between the time it was deposited into H & R Block's account, which King had no control over, and subsequently redeposited into King's account at 1st Midwest:

> The bank account was created so H & R had a place to deposit the Debtor's tax refund, withdraw whatever amounts they deemed necessary for their fees, cover any preexisting debts of the Debtor, and then refund any remaining monies to the Debtor. Any amount sent back to the debtor was an overpayment of preparation fees, costs, and so on, from non-exempt funds which had been assigned to H & R Block.[4]

The Trustee cites no *legal* authority whatsoever in support of this theory. Just because the refund was initially deposited into H & R Block's bank account, before being distributed back to King, does not mean that it somehow became something other than easily traceable funds in which King had a property interest. Remember, the refund was deposited into the H & R Block account for the *benefit* of the debtor.[5] The entire point of the transaction

**3.** Compare this with: *Sohl v. Wainwright Trust Co.,* Ind.App., 76 Ind.App. 198, 130 N.E. 282 (1921), where the court determined that a government pension, although exempt from creditor process in the hands of the government, did not retain its exempt status when pension benefits had been paid to the pensioner [the specific wording of the exemption statute at issue is not provided in the decision]. *See also, Faurote v. Carr,* 108 Ind. 123, 9 N.E. 350 (1886). In *Brosamer v. Mark,* Ind., 561 N.E.2d 767 (1990), the Indiana Supreme Court determined that ERISA's anti-garnishment provision did not protect pension benefits, paid from an ERISA-qualified plan, in the hands of the pensioner, based upon an anti-alienation provision in ERISA which states: "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated" [29 U.S.C. § 1056(d)(1)].

**4.** *See, Trustee's Memorandum of Law in Support of Trustee's Objection to Debtor's Exemptions* at pg. 3.

**5.** *See,* Stipulation at ¶ 7, "The refund check was deposited into a bank account which was opened for Margaret Naomi King by H & R Block, with H & R holding exclusive control over the account, for the benefit of Debtor."

was so that King could ultimately *receive* her refund. It would fly in the face of the broad nature of the exemption provided by I.C. § 34–55–10–2(c)(11) if the court held that King no longer had an interest in a refund "to be received" under Title 32 of the Internal Revenue Code simply because the refund passed through H & R Block's bank account on its way to the debtor.

Also in support of this theory, the Trustee argues that through the agreement between the parties the nature of the funds "changed":

> Under the Refund Anticipation Check contract, the funds Debtor received from H & R Block were characterized not as tax refund funds but rather "Refund Anticipation Check" funds, which changes the nature of the funds by agreement of the parties.[6]

The Trustee points to other instances where he contends that the wording of the agreement somehow morphed the tax refund into something that was no longer a tax refund. But based upon the contract and disclosures concerning the transaction which were submitted with the Stipulation, the court finds that this is not the case. The first page of Exhibit "C", submitted with the Stipulation and entitled "RAC Disclosure", appears to be signed by King and sets out what a refund anticipation check is and what her rights are. The fourth bullet point from the top of the document states as follows:

> If you claim the earned income tax credit (EITC), the cost of a RAC, if applicable, will be deducted from your tax refund and will reduce your EITC benefit by the amount of the RAC fee. You

may obtain the full EITC benefit if you do not take a RAC.

Given the foregoing, obviously it was not the intent of the parties (or the agreement itself) that through this transaction the tax refund was to become something other than a tax refund.

The Trustee also argues that since King assigned her interest in the refund to H & R Block, she "could not possibly receive any interest in the refund."[7] Instead, all the debtor retained was an interest in any potential refund anticipation check. Again, the court disagrees with the Trustee. It is apparent to the court that the only reason King assigned her interest in the refund to H & R Block was so H & R Block could receive the refund on her behalf and ultimately distribute it, less fees, *back* to her. Again, the refund was deposited into the H & R Block account for the *benefit* of the debtor. H & R Block's duty in this transaction was to act for King's benefit, and its role was that of an intermediate transferee to ultimately transfer the funds to King or for King's benefit. H & R Block filed the tax returns, received the refund, subtracted out the fees owed and forwarded the balance to King's bank account. King did not surrender or gift her refund to H & R Block in hopes that, in the spirit of giving, H & R Block would forward the balance of the refund back to her after deducting its fees. Rather, H & R Block was *legally obligated* to forward this money back to her. The entire point of this transaction was so that King could ultimately receive her refund. Accordingly, the court finds that King did not waive her interest in the refund by entering into this transaction with H & R Block.

---

**6.** *See, Trustee's Memorandum of Law in Support of Trustee's Objection to Debtor's Exemptions* at pg. 3.

**7.** *See,* Stipulation at ¶ 5, "Prior to receipt of any tax refund, Margaret Naomi King fully

assigned all her right, title, and interest in the claimed $8,548 tax refund to H & R Block Tax Group, pursuant to the agreement with H & R Block, for the specific purpose of the Refund Anticipation Check."

The Trustee's next argument is that once exempt funds are commingled with nonexempt funds, the exemption is lost. In support of this contention the Trustee cites *Anuszkiewicz v. Anuszkiewicz,* 172 Ind.App. 279, 360 N.E.2d 230 (1977). However, that case dealt with the application of the tenants by the entireties doctrine under Indiana law and has no application here. In a similar vein, the Trustee also argues that if tracing is impractical, it should not be permitted and cites the Seventh Circuit case of *Townsel v. DISH Network,* 668 F.3d 967, 970–71 (7th Cir.2012). But, the issue in that decision was whether a debit card transaction was an improper assignment under the Social Security Act and does not apply to the facts of this case. More importantly, in two prior decisions, the court has decided that commingling of an earned income credit refund with other funds does not affect the ability to claim the statutory earned income credit exemption.

 Finally, the Trustee argues that the debtor waived the exemption she was entitled to under I.C. § 34–55–10–2(c)(11) because she did not claim this exemption in the state court proceedings, presumably sometime prior to the creditor garnishing her bank account. The Trustee does not cite any case law or other authority in support of this theory, and the court rejects it. Exemptions in bankruptcy cases have as their genesis the bankruptcy case itself, and prepetition proceedings in relation to an exempt asset are irrelevant to a debtor's ability to claim exemptions in the bankruptcy case.

The court finds that the earned income portion of King's tax refund can be readily determined and traced. In the unpublished decision of *In re: Tameca D. Marve,* Case No. 12–20611, the court delved into the three most common mechanisms for determining the amount of ex-

empt funds existing on the date of the filing of a bankruptcy petition, when prior to that date exempt funds have been comingled with non-exempt funds.

The first of these methods is the "Lowest Intermediate Balance Test", explained as follows in *In re Ross,* 2012 WL 3817792 (Bankr.S.D.Ind.2012):

> The Debtors next urge the Court to trace the Disputed Funds by using the "Lowest Intermediate Balance Test" ("LIBT") which they assert will result in all of the Disputed Funds being traced to the EIC Funds, and thus, exempt. The LIBT has been applied most frequently where a debtor commingles his own funds with funds he is holding in trust for another. For example, if the account balance is equal to or exceeds the amount of funds held in trust, then the full amount of the trust funds remain intact. If the account balance drops to zero, the trust funds are lost and subsequent deposits into the account are considered non-trust funds and do not replenish the trust fund portion. If the account drops to a balance less than the amount of trust funds, but not to zero, the trust funds are limited to the lowest intermediate balance in the account. Thus, the LIBT is based on the fiction that the debtor would withdraw the non-trust funds first, retaining as much as possible of the trust funds in the account. See, *Connecticut Genera [General] Life Ins. Co. v. Universal Ins. Co.,* 838 F.2d 612, 619 (1st Cir.1988); *In re MJK Clearing, Inc.,* 371 F.3d 397, 401–402 (8th Cir.2004); *In re Appalachian Oil Co., Inc.,* 471 B.R. 199 (Bankr. E.D.Tenn.2012). Courts use the LIBT to separate out funds held in trust for another from the debtor's funds which are property of the debtor's bankruptcy estate or where a creditor attempts to impress a constructive trust upon pro-

ceeds in the account. See, *U.S. v. McConnell*, 258 B.R. 869 (N.D.Tex.2001) (chapter 7 debtor had commingled immigration inspection fees which it held in trust for the Immigration and Naturalization Service); *In re Stoler [Stotler] & Co.*, 144 B.R. 385 (N.D.Ill.1992) (broker sought constructive trust over funds held by bankruptcy trustee for unpaid commissions); *In re LGI Energy Solutions, Inc.*, 460 B.R. 720 (8th Cir. BAP 2011) and *In re Appalachian Oil Co., Inc.*, 471 B.R. 199 (Bankr.E.D.Tenn. 2012) (in both cases, defendant in preference action asserted constructive trust as defense and argued that transfer was of property held in trust and not of property of the estate).

The second approach is that actually adopted in *In re Ross*, stated as follows in that decision:

> This Court is of the opinion that the LIBT appropriately may be applied to determine *what is property of the bankruptcy estate* in two circumstances: (1) where the debtor has commingled his own funds with funds he holds for another in trust, or (2) where, in a case that converts from a chapter 13 to a chapter 7, the debtor has commingled funds acquired pre petition with funds acquired post petition but pre conversion. Neither of those circumstances is present here. Furthermore, the funds in the PNC Account were fungible ... certainly the EIC Funds within that account were not specially "marked" to physically distinguish them from the non exempt funds. Thus, this Court sees no logic in

assuming that the Debtors first spent the non exempt funds in the PNC Account such that only the EIC Funds were deposited into the Huntington Account, or vice versa. Furthermore, unlike *Maine*, there is not one, but two bank accounts involved here and the balances in both dropped below the amount of the EIC Funds. Rather than using the LIBT, the fairer way to determine the exempt portion of the Disputed Funds is determine the percentage of the EIC Funds to the PNC Account total and to apply that percentage to the Disputed Funds. The parties stipulated that, as of March 16, 2012 and prior to the withdrawal of $9,300, the PNC Account balance was $10,575.88, of which $6104, or 57.72%, was made up of the EIC Funds. Applying this percentage to the Disputed Funds results in $1,296.68 (57.72% of $2,246.50) in exempt EIC Funds and $949.82 in non-exempt funds.

*Ross, supra.*[8]

The third approach is the "first-in, first-out method", explained in *In re Patterson*, 2010 WL 3606893 (Bankr.N.D.Ohio 2010) as follows:

> In determining the nature of the funds on deposit in Debtors' checking account at the time their bankruptcy petition was filed, the court finds use of the first-in, first out method of accounting appropriate to trace the source of the funds in the account. *See In re Lichtenberger*, 337 B.R. 322, 326 (Bankr.C.D.Ill.2006) ("[g]uided by the principle that exemptions are to be construed liberally in

---

**8.** The court has been unable to locate any case decided by an Indiana appellate court with respect to the tracing rules to be applied in this matter, i.e., in relation to deposits into a bank account derived from exempt funds co-mingled with non-exempt funds. However, several cases which applied in essence the LIBT approach arose in situations in which a person had co-mingled his/her own funds with funds held in trust for another, as addressed by Judge Metz. The court agrees with Judge Metz that the LIBT approach is not appropriate, given Indiana law which implicitly limits its application to the foregoing circumstance.

favor of debtors," the court applied the first-in, first-out method to determine the source of funds in the debtor's bank account); [*NCNB Financial Services, Inc. v.] Shumate*, 829 F.Supp. [178] at 181 [ (W.D.Va.1993) ] (using the first-in, first-out method in determining whether funds could be traced to social security benefits); *United States v. Griffith*, 584 F.3d 1004, 1021 (10th Cir.2009) (finding VA funds commingled in account with other funds will retain their VA character as long as they are readily traceable and may be accounted for with a standard accounting method, such as first-in, first-out tracing). Immediately before the deposit, the balance in Debtors' checking account was $362.23. After the income tax refund was deposited the balance was $5,267.23. However, before the date of filing, withdrawals were made from the account in the total amount of $1,512.13, leaving a balance of $3,755.10 at the time of filing. Applying the first-in, first-out method, this entire balance consists of payments received under the provisions of the Internal Revenue Code for the earned income credit and additional child tax credit. Debtors are, therefore, entitled to exempt the entire balance of funds in their checking account on the date of filing.

As the court recognized in *Marve*, none of the foregoing methods are, or can be, a precise analytical model for the manner in which people utilize bank accounts. Without question, if a debtor were to implement sound pre-bankruptcy planning in relation to the issue of utilization of exempt funds, or deposit of exempt funds into a bank account, it would be a relatively easy matter to segregate the exempt funds into a separate account so that they could be entirely traced to that account and their use totally accounted for. That would be a perfect world of pre-bankruptcy planning which does not exist. This is particularly true in the case currently before the court. Unlike *Marve*, the refund—received by H & R Block as a single check totaling $8,548.00—included not only the debtor's earned income credit but her withholding refund and child tax credit as well. Additionally, prior to the garnishment of the $3,138.63 by the judgement-creditor there were intervening deposits. Obviously, a scenario like this does not fit neatly into any one of the foregoing methods.

■ The question is what portion of the $3,138.63 garnished by the judgement-creditor is exempt earned income credit, if any. The "first-in first-out" approach is of limited use when the earned income credit is commingled with the withholding refund in a single check. Certainly one could track over a period of time how much of the total refund is remaining after a period of account debits and deposits. However, this approach would not determine what portion of the amount left over was earned income credit. Similarly, utilizing the "percentage of the refund to the account total" approach is of limited use where, as in this case, there are intervening deposits after the refund is deposited. The solution is to use a combination of both methods. The "first-in, first-out" principle applies with respect to non-tax refund derived funds vis-a-vis funds derived from the tax refund. The "percentage of the refund" approach applies with respect to the mixed tax refund funds, so that use of the tax refund funds is divided between earned income credit funds and non earned income credit refund funds in accordance with the percentage each component bears to the total refund. The court does not endorse the "lowest intermediate balance" approach: this approach derives from a circumstance designed to protect an innocent party from defalcation by a party to whom funds were entrusted, who then

commingles the entrusted funds with other funds to the detriment of the entrusting party. There is only one interest to be considered in this context—that of the injured entrusting party. In the bankruptcy arena, interests of the debtor in preserving an exemption must be balanced against interests of the estate in recovering non-exempt funds for the benefit of creditors. If a debtor desire to totally protect the exempt portion of a mixed refund, they have the control of that refund and can set up an account comprised of only exempt funds.

Pursuant to the Stipulation, the tax refund of $8,548 consisted of:

W–2 withholdings of $1,010.00

Earned Income Credit of $5,891.00

Additional Child Tax Credit of $1,647.00

68.92% of the total refund was earned income credit ($5,891.00/$8,548.00), so obviously 68.92% of every dollar spent is EIC. After H & R Block deducted it fees, $8,196.55 was deposited into King's 1st Midwest Bank account on February 8, 2013. The balance of the account prior to the deposit, as reflected in the account statement/daily balance summary attached to the Stipulation, was $76.10. That same day King withdrew $3,000.00 from the account and there were debits against the account totaling $834.46; which brought the balance of the account to $4,438.19. Using "first-in first-out" we know that the $76.10 previously in the account was gone and what was left (the $4,438.19) was all refund, 68.92% of which was EIC.

On February 11, 2013, there were several more debits against the account ($1,505.06) which brought the balance to $2,933.13. Then, on February 12, 2013, there was a deposit in the amount of $497.37 and five separate debits against the account totaling $450.22. This brought the balance of the account as of February 12th to $2,980.28. We know that of the foregoing amount, $497.37 is "new" money and $2,482.91 is what is left of the tax refund. The very next day there was another deposit in the amount of $400.00 plus two debits totaling $211.65. Using "first-in first-out" these debits are only against the remainder of the tax refund. This results in $897.37 of "new" money and $2,271.26 of tax refund money ($2,482.91–$211.65) left in the account. The last transaction on the account for February 13th was the garnishment of $3,138.63 which left a balance of $30.00 in the account. Again, under "first-in first-out" we know that this garnishment was comprised of the remaining $2,271.26 of the tax refund and $867.37 of the deposit or "new" money—and the remaining $30.00 in the account was what was left of the two deposits.

Knowing that 68.92% of the total refund was EIC, we apply that percentage to the $2,271.26 which was what was left of the refund just prior to the garnishment. Accordingly, the court finds that $1,565.35 of the $3.138.63 garnished by Credit Acceptance Corporation is earned income credit and is an exempt asset of King's bankruptcy estate. The court also finds that balance in the amount of $1,573.28 is comprised of the remaining non-exempt portion of the tax refund ($705.91) and the two deposits less the $30.00 left in the account ($867.37) and, therefore, is not an exempt asset of this bankruptcy estate and is subject to administration by the Chapter 7 Trustee.

IT IS THEREFORE ORDERED that the Chapter 7 Trustee's objection to the debtor's exemptions is granted to the extent of $1,573.28.